UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK      X
                                                          :
ZIP INTERNATIONAL GROUP, LLC,                :
                                                          :   09 Civ. 2437 (JG)(VVP)
                                  Plaintiff,          :
                                                          :   ECF CASE
          -against-                                   :
                                                          :
TRILINI IMPORTS, INC., a/k/a TRILINI       :
IMPORTS,                                             :
                                                          :
                                  Defendant.       :
_____X


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S AMENDED MOTION
TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR LACK OF STANDING
UNDER FED. R. CIV. P. 12(b)(1) AND FAILING TO STATE A CLAIM UPON WHICH
RELIEF CAN BE GRANTED UNDER FED. R. CIV. P. 12(b)(6) AND FAILING TO JOIN
A NECESSARY PARTY UNDER FED. R. CIV. P. 12(b)(7) AND 19**

Charles H. Knull (CHK-1741)
Linda M. Dougherty (LD-2813)
ULLMAN, SHAPIRO & ULLMAN, LLP
299 Broadway, Suite 1700
New York, NY 10007
Tel. (212) 571-0068
Fax (212) 571-9424

*Attorneys for Defendant*

# TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT…………………………………………….... 1

II.     FACTUAL BACKGROUND……………………………………………….....3

        A.      The Parties…………………………………………………………..... 3

        B.      Plaintiff's Purported Rights In The Two Trademarks…………………….. 3

III.    SUMMARY OF THE PLEADINGS……………………………………….....3

IV.     PLAINTIFF LACKS STANDING………………………………………………4

        A.      Plaintiff Has No Right To Enforce The Two Trademarks……................... 4

                1.      Federal Law Controls A Claim For
                        Common Law Trademark Infringement…………………………… 4

                2.      Plaintiff Is, At Best, A Licensee…………………………………… 5

                        a.      Plaintiff Is Not An Assignee………………………………6

                        b.      Plaintiff is Not A De-Facto Assignee……………………… 7

                        c.      Plaintiff Has No Common Law Ownership Rights……….. 8

        B.      Plaintiff Has Pled No Protectable Interest
                Actionable Under 43(a) of the Lanham Act………………………………… 9

V.      PLAINTIFF FAILS TO STATE ANY CLAIM
        UPON WHICH RELIEF CAN BE GRANTED……………………………….. 11

        A.      Plaintiff Does Not Have An Exclusive
                License On the Trademarks (Count I)………………….......................... 11

        B.      The License Is Void (Count I)………………………………………… 13

        C.      Defendant's Importation of "Gray-Market"
                Goods Is Lawful (Count I)…………………………………………… 13

        D.      There Has Been No Passing Off Or Reverse Passing Off,
                And Therefore No Unfair Competition Under Federal Law (Count II)…… 16

        E.      There Has Been No Fraudulent Misrepresentation Or Confusion,
                And Therefore No False Advertising Under Federal Law (Count III)……. 17

F.     There Has Been No Consumer Harm, And Therefore
No Deceptive Acts and Practices Under N.Y.G.B.L. (Count IV)…………. 18

G.     There Has Been No Consumer Harm, And Therefore
No False Advertising Under N.Y.G.B.L. (Count VI)……………………… 19

H.     There Has Been No Infringement Or Bad Faith, And Therefore
No Unjust Enrichment Or Grounds For Accounting (Counts V, VIII)……. 19

I.     There Has Been No Bad Faith, And Therefore No Unfair
Competition Under New York Common Law (Count VII)………………...20

VI.     THE COMPLAINT FAILS TO NAME AN
INDISPENSIBLE PARTY AND SHOULD BE DISMISSED……………………21

VII.     CONCLUSION……………………………………………………………………...25

## TABLE OF AUTHORITIES

### CASES

A&L Labs., Inc. v. Bou-Matic, LLC
429 F.3d 775 (8th Cir. 2005)…………………………………………………………… 9

Arthur Murray, Inc. v. Horst
110 F. Supp. 678 (D. Mass. 1953)……………………………………………...…. 13

Association of Co-Operative Members, Inc. v. Farmland Industries, Inc.
684 F.2d 1134 (5th Cir. 1982)…………………………………………………………22

Automated Salvage Transport, Inc. v. Wheelabrator Environmental Sys., Inc.
155 F.3d 59 (2d Cir. 1998)…………………………………………………………… 11

Bi-Rite Enterprises, Inc. v. Button Master
555 F. Supp. 1188 (S.D.N.Y. 1983)…………………………………………………….. 5

Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.
339 F. Supp.2d 944 (W.D. Mich. 2004)………………………………………………… 7

Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co.
145 F.3d 481 (2d Cir. 1998)………………………………………………………… 20

Bunn-O-Matic, Corp. v. Bunn Coffee Services, Inc.
88 F. Supp. 2d 914 (C.D. Ill. 2000)…………………………………………………... 9

Cartier, Inc. v. Three Sheaves Co., Inc.
465 F. Supp. 123 (S.D.N.Y. 1979)……………………………………………………13

CBS Inc. v. Springboard Int'l Records
429 F. Supp. 563 (S.D.N.Y. 1976)…………………………………………………… 16

Champion Spark Plug Co. v. Sanders
331 U.S. 125 (1947)………………………………………………………………… 20

Compagnie Nationale Air France v. Port of New York Authority
427 F.2d 951 (2d Cir. 1970)……………………………………………………......... 24

Computer Associates v. Int'l, Inc. v. Computer Automation, Inc.
678 F. Supp. 424 (S.D.N.Y. 1987)……………………………………………………..21

Conley v. Gibson
355 U.S. 41 (1957)……………………………………………………………… 11

Cuisinarts, Inc. v. Robot-Coupe Intern. Corp.
580 F. Supp. 634 (S.D.N.Y. 1984)………………………………………………… 20

Dastar Corp. v. Twentieth Century Fox Film Corp.
539 U.S. 23 (2003)…………………………………………………………………16

Dress For Success Worldwide v. Dress 4 Success
589 F. Supp.2d 351 (S.D.N.Y. 2008)……………………………………………… 8, 9

Earl v. Peverett
1991 WL 33281 (S.D.N.Y.)………………………………………………………… 22

El Greco Leather Products Co., v. Shoe World, Inc.
726 F. Supp. 25 (E.D.N.Y. 1989)………………………………………………… 20

Finance Investment Co.(Bermuda) v. Geberit AG
165 F.3d 526 (7th Cir. 1998)……………………………………………………......... 7

Fleischer v. W.P.I.X. Inc.
213 N.Y.S.2d 632 (Sup.Ct. 1961)……………………………………………......... 24

Fusco Group, Inc. v. Loss Consultants International, Inc.
462 F. Supp.2d 321 (N.D.N.Y. 2006)……………………………………………… 22

Galerie Furstenberg v. Coffaro
697 F. Supp. 1282 (S.D.N.Y. 1988)……………………………………………………19

Gidatex, S.r.L., v. Campaniello Imports, Ltd.
49 F. Supp.2d 298 (S.D.N.Y. 1999)……………………………………………………………19

Gruen Marketing Corp. v. The Benrus Watch Co., Inc.
955 F. Supp. 979 (N.D. Ill. 1997)………………………………………………………….7

Hot Stuff Foods, LLC v. Mean Gene's Enterprises, Inc.
465 F. Supp.2d 1078 (D.S.D. 2006)…………………………………………….........9

ICEE Distributors, Inc. v. J&J Snack Foods Corp.
325 F.3d 586 (5th Cir. 2003)……………………………………………………………… 7

In re Houbigant, Inc.
914 F. Supp. 964 (S.D.N.Y. 1995)……………………………………………….......… 5

International Healthcare Exchange, Inc. v. Global Healthcare Exchange, LLC
470 F. Supp.2d 365 (S.D.N.Y. 2007)……………………………………………….......… 5

International Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.
80 F.3d 749 (2d Cir. 1996)………………………………………………………………… 20

Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.
32 F.3d 697 (2d Cir. 1994)………………………………………………………………11

JTG of Nashville, Inc. v. Rhythm Band, Inc.
693 F. Supp. 623 (M.D. Tenn. 1988)………………………………………………….........22

Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Management, Inc.
2007 WL 74304 (E.D.N.Y.)……………………………………………………………….5

Krasnyi Oktyabr v. T.G.F. Productions, LLC
2008 WL 4426961 (E.D.N.Y.)……………………………………………………………….1

Krasnyi Oktyabr v. Trilini et al.
2007 WL 1017620 (E.D.N.Y.)……………………………………………….……1, 12, 15

Krasnyi Oktyabr v. Trilini et al.
578 F. Supp.2d 455 (E.D.N.Y. 2008)…………………………………………………….1, 23

La Cibeles, Inc. v. Adipar, Ltd.
2000 WL 1253240 (S.D.N.Y.)………………………………………………………….…18

La Societe Anonyme des Parfums Le Galion v. Jean Patou, Inc.
495 F.2d 1265 (2d Cir. 1974)……………………………………………………........ 22

Louis Vuitton Malletier v. Dooney & Bourke, Inc.
500 F. Supp.2d 276 (S.D.N.Y. 2007)…………………………………………….......20

Mansfield, C. & L.M.R. Co. v. Swan
111 U.S. 379 (1884)…………………………………………………………………...10

Marrero Enterprises of Palm Beach, Inc. v. Estefan Enterprises, Inc.
2007 WL 4218990 (S.D. Fla. 2007)………………………………………………… 22

Maurizio v. Goldsmith
230 F.3d 518 (2d Cir. 2000)………………………………………………………… 18

Montellito v. Nina of California, Inc.
335 F. Supp. 1288 (S.D.N.Y. 1972)……………………………………………….. 10

Morse-Starrett Products, Co. v. Steccone
86 F.Supp. 796 (N.D. Cal. 1949)……………………………………………………13

National Basketball Assoc. v. Motorola, Inc.
105 F.3d 841 (2d Cir. 1997)………………………………………………………… 17

National Licensing Assoc. LLC v. Inland Joseph Fruit Co.
361 F. Supp.2d 1244 (E.D. Wash. 2004)……………………………………………10

NEC Elec. V. CAL Circuit Abco
810 F.2d 1506 (9th Cir. 1987)…………………………………………………….......14

Olympus Corp. v. U.S.
792 F.2d 315 (2d Cir. 1986)……………………………………………………… 10, 14

PepsiCo, Inc. v. Giraud
7 U.S.P.Q.2d 1371 (D.P.R. 1988)………………………………………………… 15

Perkins School for the Blind v. Maxi-Aids, Inc.
274 F. Supp.2d 319 (E.D.N.Y. 2003)……………………………………………… 18

Pfizer, Inc. v. Y2K Shipping & Trading, Inc.
2004 WL 896952 (E.D.N.Y.)……………………………………………………….5, 11

PPX Enterprises., Inc. v. Audiofidelity Enterprises., Inc.
818 F.2d 266 (2d Cir. 1987)……………………………………………………….. 17

Prince of Peace Enterprises, Inc. v. Top Quality Food Market, LLC
2007 WL 704171 (S.D.N.Y.)……………………………………………………….8

Pure Food Products, Inc. v. American Bakeries Co.
1972 WL 19316 (N.D. Ill.)…………………………………………..…............... 22

Resource Developers Inc., v. Statute of Liberty-Ellis Island Foundation
926 F.2d 134 (2d Cir. 1991)……………………………………………………. 16

Rodriguez v. It's Just Lunch Int'l
2009 WL 399728 (S.D.N.Y.)………………………………………………........19

Safeway Stores, Inc. v. Safeway Properties, Inc.
307 F.2d 495 (2d Cir. 1962)……………………………………………….......9

Saratoga Vichy Spring Co. v. Lehman
625 F.2d 1037 (2d Cir. 1980)……………………………………………………… 21

Societe Comptoir de L'Industrie Cotonniere Etablissements Boussac v. Alexander'
Department Stores, Inc., 299 F.2d 33 (2d Cir. 1962)……………………………………13

Staron v. McDonald's Corp.
51 F.3d 353 (2d Cir. 1995)………………………………………………………. 11

Sun Trading Distributing Co. v. Evidence Music, Inc.
980 F. Supp. 722 (S.D.N.Y. 1997)………………………………………………… 16, 17

Time, Inc. v. Petersen Publ'g Co.
173 F.3d 113 (2d Cir. 1974)………………………………………………………… 22

United States Blind Stitch Machine Corp. v. Union Special Machine Co.
287 F. Supp. 468 (S.D.N.Y. 1968)…………………………………………………… 9

Warth v. Seldin
422 U.S. 490 (1975)………………………………………………………….......10

W.E. Bassett Co. v. Revlon, Inc.
435 F.2d 656 (2d Cir. 1970)……………………………………………….…...... 20

W.W.W. Pharm. Co. v. Gillette Co.
984 F.2d 567 (2d Cir. 1993)………………………………………………….......21

Yamaha Corp. of America v. United States
961 F.2d 245 (D.C. Cir. 1992)……………………………………………………14

## **STATUTES**

15 U.S.C. § 1114……………………………………………………………………5, 11

15 U.S.C. § 1125……………………………………………………………..… *passim*

15 U.S.C. § 1127……………………………………………………………5, 11

18 U.S.C. § 2320…………………………………………………….…14

19 U.S.C. § 1526…………………………………………………………14

Fᴇᴅ. R. Cɪᴠ. P. 12(b)(1)…………………………………………............ 1, 6, 11

Fᴇᴅ. R. Cɪᴠ. P. 12(b)(6)…………………………………………............ *passim*

Fᴇᴅ. R. Cɪᴠ. P. 12(b)(7)…………………………………………............1, 21, 25

Fᴇᴅ. R. Cɪᴠ. P. 19……………………………………………………...1, 21, 24, 25

N.Y.G.B.L. § 349……………………………………………………4, 18, 19

N.Y.G.B.L. § 350……………………………………………………4, 18, 19

## <u>TREATISES</u>

J. Thomas McCarthy, <u>McCarthy on Trademarks and Unfair Competition</u>, (2009)……….. *passim*

Defendant Trilini Imports, Inc. a/k/a Trilini Imports ("Trilini" or "Defendant") hereby

moves to dismiss all counts of Plaintiff ZIP International Group's ("ZIP" or "Plaintiff")

Amended Complaint.  The grounds for this motion are (i) lack of standing under FED. R. CIV. P.

12(b)(1); and (ii) failing to state a claim upon which relief can be granted pursuant to FED. R.

CIV. P. 12(b)(6); and (iii) failing to join a necessary party under FED. R. CIV. P. 12(b)(7) and 19.

## I.    PRELIMINARY STATEMENT

Defendant is a respected and ethical New York Corporation that has been in the business

of importing food products for over 20 years.  It respects the trademarks of other companies and

expects the trademarks it controls also to be respected.  Last year, in this District, Defendant

successfully ended an attack nearly identical to the instant one brought by a different competitor.

In that case, a distributor with an "exclusive license" to sell certain Russian chocolates to the

"Russian Ethnic market" in the United States alleged claims of trademark infringement and

unfair competition against Defendant for importing the same brand of chocolates.  Judge Trager

of this Court found that there was no exclusive license on the trademarks and thus no standing

for the distributor to enforce rights in the trademarks at issue, retaining only one claim based

upon alleged product storage quality control issues.  See Krasnyi Oktyabr v. Trilini et al., 578 F.

Supp.2d 455 (E.D.N.Y. 2008) ("Trilini II").  See also Krasnyi Oktyabr v. T.G.F. Productions,

LLC, No. CV-05-3020, 2008 WL 4426961 (E.D.N.Y. Sept. 25, 2008); Krasnyi Oktyabr v. Trilini

et al., No. CV-05-5359, 2007 WL 1017620 (E.D.N.Y. March 30, 2007) ("Trilini I").

Here again, Defendant is forced to defend itself against unfounded claims of trademark

infringement and unfair competition brought by another distributor that is falsely asserting rights

in trademarks owned by a third-party manufacturer.  Plaintiff brought this action under Section

43 of the Lanham Act, 15 U.S.C. § 1125, and asserted various related common law and state law

causes of action in an attempt to prevent Defendant from lawfully importing, offering for sale, selling, and distributing in the United States the Бабкины Семечки brand of sunflower seeds produced by the Russian manufacturer OOO Troll ("Troll").

Plaintiff's apparent intent in filing this Amended Complaint is to monopolize the importation, sale, and distribution in the United States of sunflower seeds manufactured by Troll and bearing Troll's two trademarks, OOO TROLL and Бабкины Семечки ("BABKINY SEMECHKI") (hereafter referred to as the "Two Trademarks"). Plaintiff erroneously believes that it is entitled to exercise such a monopoly based upon an agreement between itself and Troll (annexed to the Amended Complaint as Exhibit A) (hereinafter the "Agreement"). Plaintiff alleges that the Agreement constitutes an "exclusive license and trademark assignment agreement" with Troll whereby Troll has granted Plaintiff an exclusive license and assignment in the Two Trademarks. However, this Agreement affords Plaintiff rights with respect to use of the Two Trademarks for only one version of sunflower seeds manufactured by Troll, namely those that are "especially seasoned" for distribution in the licensed territory (hereinafter the "Especially Seasoned Seeds"). Plaintiff alleges that Defendant is selling another version of sunflower seeds produced by Troll "for the internal Russian market" (hereinafter the "Standard Seeds"). Thus, the Agreement does not give Plaintiff exclusive control over all uses of the Two Trademarks. Plaintiff's control is limited to use with the Especially Seasoned Seeds.[1]

Plaintiff is not the owner, assignee, or exclusive licensee of the Two Trademarks, and it therefore has no right or authority to bring the claims set forth in the Amended Complaint. For the reasons outlined below, Plaintiff's Amended Complaint should be dismissed in its entirety.

---

[1] If Troll's sale of the Standard Seeds which Defendant purchases for distribution in the U.S. somehow constitutes a breach of the Agreement between Troll and Plaintiff, that is a matter to be resolved between Troll and Plaintiff that should not involve this Court or Defendant.

## II.    FACTUAL BACKGROUND

### A.    The Parties

Plaintiff ZIP is a New Jersey company that imports sunflower seeds produced by Troll that are "especially seasoned" for distribution in the U.S. and elsewhere.  Defendant Trilini is alleged to also be importing sunflower seeds manufactured by Troll for sale and distribution in the U.S.

### B.    Plaintiff's Purported Rights In The Two Trademarks

Plaintiff alleges that it has the authority to enforce the Two Trademarks by reason of its Agreement with Troll, which Plaintiff characterizes as an exclusive license and assignment agreement.  However, the Agreement, which Defendant argues *infra* is void, does not grant Plaintiff an exclusive license in the Two Trademarks, nor does it convey an assignment. Plaintiff, in fact, has no right to bring this action because it is not the owner of the Two Trademarks.

## III.    SUMMARY OF THE PLEADINGS

The Amended Complaint sets forth eight causes of action for trademark infringement, unfair competition, and related causes of action under state, common, and federal law, stemming from Defendant's importation, sale, and distribution of the Standard Seeds.

**COUNT I** is for trademark infringement under "the trademark statutes and case law of New York"[2] by reason of Defendant's use in commerce of the Two Trademarks in connection with the importation, sale, and distribution of the Standard Seeds.

**COUNT II** is for unfair competition, false representations, and false designation of origin under 15 U.S.C. § 1125(a)(1) by reason of Defendant's use in commerce of the Two Trademarks

---

[2] The allegation also states that Plaintiff claims trademark infringement under the laws of "other states and territories of the United States," but this is carried no further than this allegation.

in connection with the importation, sale, and distribution of the Standard Seeds.

**COUNT III** is for false advertising under 15 U.S.C. § 1125(a)(1)(B) by reason of Defendant's use in commerce of the Two Trademarks in connection with the advertising, sale, and distribution of the Standard Seeds.

**COUNT IV** is for deceptive acts and practices under N.Y.G.B.L. §349 by reason of Defendant's use in commerce of the Two Trademarks in connection with the importation, sale, and distribution of the Standard Seeds.

**COUNT V** is for unjust enrichment by reason of Defendant's use in commerce of the Two Trademarks in connection with the importation, sale, and distribution of the Standard Seeds.

**COUNT VI** is for false advertising under N.Y.G.B.L. §350 by reason of Defendant's use in commerce of the Two Trademarks in connection with the advertising, sale, and distribution of the Standard Seeds.

**COUNT VII** is for unfair competition under New York common law by reason of Defendant's use in commerce of the Two Trademarks in connection with the importation, sale, and distribution of the Standard Seeds.

**COUNT VIII** is for an accounting by Defendant for all of the moneys and other property received by it by reason of Defendant's use in commerce of the Two Trademarks in connection with the importation, sale, and distribution of the Standard Seeds.

## IV.   PLAINTIFF LACKS STANDING

### A.   <u>Plaintiff Has No Right To Enforce The Two Trademarks</u>

#### 1.   Federal Law Controls A Claim For <u>Common Law Trademark Infringement</u>

Plaintiff's action for trademark infringement under common law must be examined under federal law.  "The same analysis is used for common law trademark infringement and unfair

competition cases as is used in federal law." Pfizer, Inc. v. Y2K Shipping & Trading, Inc., No. 00-CV-5304, 2004 WL 896952, at *7 (E.D.N.Y. March 26, 2004).  See also Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Management, Inc., No. 04-CV-2293, 2007 WL 74304 (E.D.N.Y. Jan. 8, 2007) (subsuming a claim for trademark infringement under New York common law into the Lanham Act); International Healthcare Exchange, Inc. v. Global Healthcare Exchange, LLC, 470 F. Supp.2d 365 (S.D.N.Y. 2007) (subsuming New York state law claims for trademark infringement and unfair competition into the same claims under federal law); Bi-Rite Enterprises, Inc. v. Button Master, 555 F. Supp. 1188 (S.D.N.Y. 1983) (resolving all of plaintiffs' federal and state law trademark and unfair competition claims (except a state dilution claim) by applying federal law).

A general principle of trademark law is that a licensee does not acquire title to the trademarks licensed to it.  In re Houbigant, Inc., 914 F. Supp. 964, 990 (S.D.N.Y. 1995), citing J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 18.63 (2009).  Section 32 of the Lanham Act, 15 U.S.C. § 1114, states that an action for trademark infringement may only be brought by the trademark "registrant."  The term "registrant" is defined in 15 U.S.C. § 1127 to include the legal representatives, predecessors, successors, and assignees of the registrant.  It does not, however, include a licensee of the trademark.

### 2.      Plaintiff Is, At Best, A Licensee

On its face, the Agreement is a license agreement that establishes that Troll, "as owner of the [Two Trademarks], has granted an exclusive license" to Plaintiff.  As demonstrated *infra*, this Agreement does not actually convey an exclusive license to Plaintiff.  In addition, the Agreement is neither an assignment nor a de-facto assignment.  Furthermore, Plaintiff, does not have common law ownership rights to the Two Trademarks.  Plaintiff is, at best, a licensee of Troll,

and as such, Plaintiff falls outside the statutory definition of "registrant" and lacks standing to sue for trademark infringement under federal law and common law. Count I should be dismissed for lack of standing under Fed. R. Civ. P. 12(b)(1).

### a. Plaintiff Is Not an Assignee

In its Amended Complaint, Plaintiff alleges that it is the "exclusive licensee and assignee of the Two Trademarks" (Amended Complaint, ¶¶ 4A, 23, 31, hereinafter "Amended Compl., ¶ -"); and that the Two Trademarks "have been exclusively licensed by [Troll] to Plaintiff for use in the United States…" (Amended Compl., ¶ 5); and that the Agreement is a "license and assignment agreement" (Amended Compl., ¶¶ 11, 24-26); and also that it owns in common law the Two Trademarks (Amended Compl., ¶¶ 4, 17).

As a preliminary matter, Defendant notes that one cannot be both a licensee and an assignee of a trademark because these are separate, distinct, and mutually exclusive types of property rights. An assignee owns all rights in a trademark, and is therefore the owner. In contrast, a licensee is merely granted limited permission by the owner to use a mark. McCarthy, supra, § 18.1. If Plaintiff is the assignee of the Two Trademarks, and therefore the owner as it pleads in paragraphs 4A, 11, 23, 24, 25, 26 and 31 of the Amended Complaint, then it does not need permission in the form of a license from Troll to use the Two Trademarks, nor does Troll have the authority to grant a license.

The Agreement, in fact, explicitly states that Troll, "as owner of the [Two Trademarks]," has granted an "exclusive license" to Plaintiff for a specific period of time ending on December 31, 2010. Despite Plaintiff's repeated mischaracterizations of this Agreement as an assignment, the Agreement itself does not use the word "assignment" or any variation thereof even once.

### b. **Plaintiff Is Not A De-Facto Assignee**

The Agreement explicitly refers to Troll as the "owner" granting a "license" to Plaintiff. In rare cases, where a license agreement grants the licensee the right to exclude the licensor from using its own trademarks, the licensee may be deemed to be a de-facto assignee and therefore have standing to sue for trademark infringement under the definition of a "registrant."

Courts have identified several factors that weigh against the finding of a de-facto assignment, which include the imposition by the license agreement of geographical restrictions on the licensee's use. See ICEE Distributors, Inc. v. J&J Snack Foods Corp., 325 F.3d 586, 598 (5th Cir. 2003) (finding contract was merely a license agreement because it imposed geographic limitations on licensee), citing Finance Investment Co. (Bermuda) v. Geberit AG, 165 F.3d 526, 531-32 (7th Cir. 1998) (finding license agreement was not tantamount to an assignment because it set forth duties between the parties inconsistent with an assignment such as geographic limitations on licensee's territory). See also Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co., 339 F. Supp.2d 944, 959-60 (W.D. Mich. 2004); Gruen Marketing Corp. v. The Benrus Watch Co., Inc., 955 F. Supp. 979, 982-83 (N.D. Ill. 1997) (licensee lacked standing because agreement contained geographic limitations and explicit licensing language and therefore was not an assignment). The Agreement grants Plaintiff "an exclusive license…to use the Two Trademarks *in the United States, Guam, Puerto Rico, Virgin Islands, Canada, Mexico and all other parts of North America (the 'Geographic Area')*" (emphasis added) with respect to the Especially Seasoned Seeds. These restrictions on Plaintiff's use of the Two Trademarks are consistent with a license, not an assignment.

Moreover, the Agreement provides for a termination date of December 31, 2010, after which point a renewal may be made by mutual agreement only. An assignment is an irrevocable

transfer of all rights in a mark, and the inclusion of a termination date clearly indicates that an agreement is not an assignment.  See Prince of Peace Enterprises, Inc. v. Top Quality Food Market, LLC, No. 07 Civ. 00349, 2007 WL 704171, at *3 (S.D.N.Y. March 7, 2007) (licensee lacked standing because agreement had a termination provision and therefore was not an assignment), citing McCarthy, supra, § 18.1.

Furthermore, despite the Agreement's statement that Troll "has no right to enforce the Two Trademarks as to any infringements occurring in the Geographic Area during the period of this agreement," a fair reading of the Agreement supports an understanding that this exclusion is limited to the use the Two Trademarks with respect to the Especially Seasoned Seeds only.  Troll has not, by this Agreement, relinquished its rights to enforce, use, or license the Two Trademarks with respect to any other product, such as the Standard Seeds.  This Agreement therefore does not convey to the licensee the right to exclude the licensor from using its own trademarks.

These restrictions with regard to geographic area, time period, and specific use of the Two Trademarks for particular products, and the licensing language of the Agreement itself, demonstrate that this Agreement cannot be an assignment.  The Agreement is, at best, a license.

### c. **Plaintiff Has No Common Law Ownership Rights**

Plaintiff alleges that it has acquired common law trademark ownership by reason of its use of the Two Trademarks.  It further alleges that this interest "is in addition to the Plaintiff's interest under the [Agreement]."  Under a federal common law principle known as "the Merger Rule," any trademark rights that a party may have acquired are lost once that party accepts a position as a licensee and thereby acknowledges that the licensor owns the marks. See Dress For Success Worldwide v. Dress 4 Success, 589 F. Supp.2d 351, 359 (S.D.N.Y. 2008) ("A licensee's prior claims of any independent rights to a trademark are lost, or merged into the license, when

he accepts his position as licensee, thereby acknowledging the licensor owns the marks and that his rights are derived from the licensor and inure to the benefit of the licensor."), quoting Bunn-O-Matic, Corp. v. Bunn Coffee Services, Inc., 88 F. Supp. 914 (C.D. Ill. 2000). See also McCarthy, supra, § 18:47. Thus, a license agreement extinguishes any prior claims to common law rights in a trademark. Dress For Success Worldwide, 589 F. Supp.2d at 361. See also A&L Labs., Inc. v. Bou-Matic, LLC, 429 F.3d 775 (8th Cir. 2005) (finding that if licensee had owned the trademarks it would not have needed licensor's permission to use them); Hot Stuff Foods, LLC v. Mean Gene's Enterprises, Inc., 465 F. Supp.2d 1078 (D.S.D. 2006) (finding a license agreement is inconsistent with trademark ownership).

The Agreement, signed by Plaintiff, explicitly states that Troll is the owner of the Two Trademarks and that the Agreement itself is a license agreement. Moreover, Plaintiff refers to itself as a licensee continually throughout the Amended Complaint. Plaintiff has therefore accepted its position as licensee and acknowledged Troll as the licensor and owner of the marks. Therefore, Plaintiff has no common law rights in the Two Trademarks, despite language of the Agreement purporting to establish otherwise.

### B. Plaintiff Has Pled No Protectable Interest Actionable Under 43(a) of the Lanham Act

Federal law controls the analysis of common law unfair competition claims, including claims of false representations, false designation of origin, and false advertising. See United States Blind Stitch Machine Corp. v. Union Special Machine Co., 287 F. Supp. 468, 470 (S.D.N.Y. 1968) ("Although technically New York law would be applicable in [a] diversity action, both the federal law and New York courts apply the same basic principles in unfair competition cases."); Safeway Stores, Inc. v. Safeway Properties, Inc., 307 F.2d 495, 498 (2d Cir. 1962) (perceiving no difference in the relevant principles of federal and New York unfair

competition law).  Plaintiff's claims for unfair competition, false representations, false

designation of origin, and false advertising should be examined under Section 43(a) of the

Lanham Act, 15 U.S.C. 1125(a).

Under Section 43(a), Plaintiff must demonstrate a protectable interest in order to have

standing to sue.  See National Licensing Assoc. LLC v. Inland Joseph Fruit Co., 361 F. Supp.2d

1244, 1257 (E.D. Wash. 2004).  The Agreement grants Plaintiff an interest in the Two

Trademarks when used in connection with the Especially Seasoned Seeds.  However, Plaintiff

alleges that Defendant is importing and selling Standard Seeds, another genuine Troll product.

The Agreement does not grant Plaintiff an interest in the Two Trademarks with regard to this

other product.  Plaintiff alleges that it is being harmed in the marketplace by Defendant's

importation of Standard Seeds.  However, an interest in stifling lawful competition is not a

protectable interest that should confer standing under Section 43(a).

Moreover, the basis for an action under Section 43(a) must be use of the mark in

interstate commerce that is likely to confuse or deceive consumers as to the source of the goods.

Montellito v. Nina of California, Inc., 335 F. Supp. 1288 (S.D.N.Y. 1972).  But Plaintiff alleges

that it is importing Especially Seasoned Seeds made by Troll and that Defendant is importing

Standard Seeds made by Troll.  There can be no consumer confusion where both parties' goods

are genuine and originate from the same source.  See Olympus Corp. v. U.S., 792 F.2d 315 (2d

Cir.1986).  Furthermore, the pleadings are clear that there has been no deception.

Standing "must affirmatively appear on the record," Mansfield, C. & L.M.R. Co. v.

Swan, 111 U.S. 379, 382 (1884), and the burden of establishing standing remains at all times

with the party invoking federal jurisdiction.  Warth v. Seldin, 422 U.S. 490, 518 (1975).

Therefore, Counts II, III, and VII should be dismissed for lack of standing under FED. R. CIV. P.

12(b)(1).

## V.    PLAINTIFF FAILS TO STATE ANY CLAIM UPON WHICH RELIEF CAN BE GRANTED

A motion to dismiss based upon Rule 12(b)(6) should be granted where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Staron v. McDonald's Corp., 51 F.3d 353, 355 (2d Cir. 1995), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  On a Rule 12(b)(6) motion, the Court must read the pleadings as a whole and must take the facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff.  See Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co., 32 F.3d 697, 699-700 (2d Cir. 1994).  The Court may consider only "facts stated on the face of the pleading and in documents appended to the complaint or incorporated in the pleading, as well as matters of which judicial notice may be taken."  Automated Salvage Transport, Inc. v. Wheelabrator Environmental Sys., Inc., 155 F.3d 59, 67 (2d Cir. 1998).

### A.    Plaintiff Does Not Have an Exclusive License On The Trademarks (Count I)

Count I is for trademark infringement under "the trademark statutes and case law of New York and other states and territories of the United States" by reason of Defendant's use in commerce of the Two Trademarks in connection with the importation, sale, and distribution of the Standard Seeds.

As discussed *supra*, "[t]he same analysis is used for common law trademark infringement…as is used in federal law." Pfizer, Inc., 2004 WL 896652 at *7 (E.D.N.Y.). Section 32 of the Lanham Act, 15 U.S.C. § 1114, states that an action for trademark infringement may only be brought by the "registrant" of the trademark, which is defined under 15 U.S.C. § 1127 to include an assignee.  As outlined *supra*, Plaintiff is neither the owner nor the assignee or de-facto assignee of the Two Trademarks.

In exceptional circumstances, an exclusive licensee may acquire the right to enforce the trademarks licensed to it. Accordingly, Plaintiff purports to have an exclusive license to use the Two Trademarks. However, this assertion directly contradicts the language of the Agreement, which grants Plaintiff only a limited right to exclusively use the Two Trademarks in connection with the "importation, distribution, marketing, and sale of sunflower seeds *especially seasoned* by [Troll] for the Geographic Area" (emphasis added). The Agreement does not grant Plaintiff the exclusive license to use the Two Trademarks in general or in connection with any other Troll product, such as sunflower seeds that are not "especially seasoned" for the Geographic Area. The Agreement is simply not an exclusive license on the trademarks, but rather an exclusive license with regard to a particular use. In Trilini I, this Court rejected the plaintiff's claim that it held an exclusive license to use a trademark and therefore had standing to enforce that trademark where the license limited the plaintiff's use to distribution within "the Russian ethnic market." Trilini I, 2007 WL 1017620, at *3-4. In the instant matter, Plaintiff's license is likewise limited to a particular use of the trademarks and is therefore not a true exclusive license.

Moreover, according to Plaintiff's Amended Complaint, Defendant's use of the Two Trademarks falls outside of the use licensed to Plaintiff by the Agreement because Defendant is purportedly selling something other than the "especially seasoned" seeds. Plaintiff's assertion that it is the exclusive licensee of the Two Trademarks and that it is therefore empowered to prevent Defendant from importing and selling genuine Standard Seeds under those marks is therefore misleading and erroneous. Plaintiff has failed to state a claim upon which relief may be granted, and Count I should be dismissed under FED. R. CIV. P. 12(b)(6).

### B.    The License is Void (Count I)

To maintain a valid trademark, a trademark owner is required to exercise control over the quality of the products or services bearing its mark.  McCarthy, supra, § 18:42.  When licensing a mark, the owner must include in the licensing agreement a provision with regard to quality control.  "[A] naked license without either transfer of good-will…or provisions for supervisory control of the product or services [is] invalid because of the public deception likely to follow." Arthur Murray, Inc. v. Horst, 110 F. Supp. 678, 678 (D. Mass. 1953) (finding license agreement to be valid because it provided licensor with control over licensee).

The Agreement has no provisions whatsoever for quality control or for the transfer of Troll's good-will and therefore is void as against public policy.  See Societe Comptoir de L'Industrie Cotonniere Etablissements Boussac v. Alexander' Department Stores, Inc., 299 F.2d 33, 35 (2d Cir. 1962) ("[A] bare license is fraud upon the public and unlawful"); Morse-Starrett Products, Co. v. Steccone, 86 F.Supp. 796, 805 (N.D. Cal. 1949) ("If the owner of a trademark wants to license the use thereof to another and still retain…the rights stemming therefrom, he must do so in such a way that he maintains sufficient control over the nature and quality of the finished product…"); Cartier, Inc. v. Three Sheaves Co., Inc., 465 F. Supp. 123, 129 (S.D.N.Y. 1979) (finding licensing agreement void because it had no provisions for quality control by licensor).  Therefore, Plaintiff has failed to state a claim upon which relief may be granted, and Count I should be dismissed under FED. R. CIV. P. 12(b)(6).

### C.    Defendant's Importation of "Gray-Market" Goods is Lawful (Count I)

Even assuming the Agreement is valid, Plaintiff's claim of trademark infringement must fail because, according to the pleadings, the seeds being imported and distributed by Defendant are genuine, lawfully obtained "gray-market" goods, and Plaintiff does not have an exclusive

license with regard to the goods being imported by Defendant.

"Gray-market" goods (also known as "parallel imports") are genuine trademarked goods legally purchased outside the United States and imported for sale into the United States by someone other than, and in competition with, the designated exclusive U.S. importer. McCarthy, supra, § 29:46. These goods are "genuine" as opposed to "counterfeit" because they are in fact manufactured by the same manufacturer that supplies the designated U.S. importer, and use of the trademark on the goods is authorized by the trademark owner. See Yamaha Corp. of America v. United States, 961 F.2d 245, 248, 248 n.2 (D.C. Cir. 1992) ("Genuine" goods … are to be distinguished from goods that 'copy or simulate' the genuine article; they *are* the genuine article, although they may not have been intended for distribution in the U.S. market."). Counterfeit goods, on the other hand, are products that display a trademark without the authorization of the trademark owner; in other words, they bear a counterfeit mark. Whereas the importation of counterfeit goods is unlawful under the Tariff Act, 19 U.S.C.A. § 1526(e), and the Anti-Counterfeiting Act, 18 U.S.C. 2320(a), the importation of "gray-market" goods is generally not illegal. See Olympus Corp. v. United States, 792 F.2d 315, 321 (2d Cir. 1986) (holding that 15 U.S.C. § 1124 applies only to merchandise bearing counterfeit or spurious trademarks that "copy or simulate" the genuine trademarks) ("The plain language of the statute does not bar importation if the goods are genuine."); NEC Elec. V. CAL Circuit Abco, 810 F.2d 1506, 1510 (9th Cir. 1987) ("Trademark law generally does not reach the sale of genuine goods bearing a true mark even though such sale is without the mark owner's consent.").

The Standard Seeds distributed by Defendant are genuine goods because, like the Especially Seasoned Seeds, they are manufactured by Troll, the owner of the Two Trademarks. The display of the Two Trademarks on the packaging of these seeds is authorized by Troll.

Plaintiff has not alleged that the mark displayed on the Standard Seeds is counterfeit or that

Defendant has in any way altered the original packaging. Nor has it alleged that the seeds were

unlawfully obtained by Defendant. To the contrary, it has alleged that Defendant purchased

these Troll-brand seeds in Russia. Thus, these seeds constitute "gray-market" goods.

An importer that has been granted an exclusive license to import certain goods into the

U.S. may, in unique circumstances, be able to block the parallel importation of "gray-market"

goods. McCarthy, supra, § 29:46. The importer's ability to do so hinges on its ability to

demonstrate a likelihood of confusion of U.S. customers based on a "material difference"

between the designated importer's goods and the "gray-market" goods. Id.; see also PepsiCo,

Inc. v. Giraud, 7 U.S.P.Q.2d 1371 (D.P.R. 1988).

Plaintiff's Amended Complaint attempts to allege such a difference by stating that the

seeds it imports are produced by Troll "with a special recipe using higher quality ingredients

than used with the seeds produced for the internal Russian market." If this difference were found

to be actual and material, and if Plaintiff had been granted an actual exclusive license on the Two

Trademarks for all products, Plaintiff might have been empowered to prevent Defendant's

importation of Standard Seeds. However, as discussed *supra*, the Agreement does not grant

Plaintiff such an exclusive license on the trademarks. Rather, the Agreement grants Plaintiff an

exclusive license to use the trademarks "with respect to the importation, distribution, marketing

and sale *of sunflower seeds especially seasoned* by the manufacturer …." (emphasis added).

Thus, Plaintiff's license is limited to use with the Especially Seasoned Seeds.

Moreover, just as the Trilini I plaintiff did not have authority to enforce the trademark

licensed to it for uses outside of "the Russian ethnic market," Trilini I, 2007 WL 1017620 at *3-

4, Plaintiff does not have authority to enforce the Two Trademarks for uses on products other

than the Especially Seasoned Seeds. Plaintiff cannot prevent the importation of the Standard

Seeds or any other genuine goods manufactured by Troll other than the Especially Seasoned

Seeds. Therefore, Plaintiff has failed to state a claim upon which relief may be granted, and

Count I should be dismissed under FED. R. CIV. P. 12(b)(6).

###    D.    There Has Been No Passing Off Or Reverse Passing Off,
And Therefore No Unfair Competition Under Federal Law (Count II)

Count II is for unfair competition, false representations, and false designation of origin

under 15 U.S.C. § 1125(a)(1) by reason of Defendant's use in commerce of the Two Trademarks

in connection with the importation, sale, and distribution of the Standard Seeds.

To state a claim under section 43(a)(1) of the Lanham Act, "plaintiff must allege that (1)

goods or services are involved, (2) interstate commerce is affected, and (3) there is a false

designation of origin or a false description or representation with respect to those goods or

services in commerce." Sun Trading Distributing Co. v. Evidence Music, Inc., 980 F. Supp. 722,

727 (S.D.N.Y. 1997), quoting CBS Inc. v. Springboard Int'l Records, 429 F. Supp. 563, 566

(S.D.N.Y. 1976).

False designation of origin under 43(a) is also known as "product infringement."

Resource Developers Inc., v. Statute of Liberty-Ellis Island Foundation, 926 F.2d 134, 139 (2d

Cir. 1991). Product infringement can occur as either (1) passing off where the defendant is

selling in a manner that suggests the product originated from the plaintiff, or (2) reverse passing

off where the defendant is selling plaintiff's product as its own. Sun Trading Distributing Co.,

980 F. Supp. at 727.

The phrase "origin of goods" in the Lanham Act "refers to the producer of the tangible

goods." Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 35 (2003). Plaintiff

alleges that Defendant purchases the Standard Seeds from the same manufacturer as Plaintiff.

Because both the Especially Seasoned Seeds imported by Plaintiff and the Standard Seeds imported by Defendant originate from the same manufacturer, and because Defendant does not advertise otherwise, there can be no finding of passing off or reverse passing off.  Accordingly, Count II for false designation of origin in violation of 43(a) of the Lanham Act fails.

**E.      There Has been No Fraudulent Misrepresentation or Confusion,
          And Therefore No False Advertising Under Federal Law (Count III)**

Count III is for false advertising under 15 U.S.C. § 1125(a)(1)(B) by reason of Defendant's use in commerce of the Two Trademarks in connection with the advertising, sale, and distribution of the Standard Seeds.

False advertising is a "fraudulent representation[ ] that goods marketed have 'ingredients or qualities' that they, in fact, do not have but that the goods of a competitor do have."  <u>Sun Trading Distributing Co.</u>, 980 F. Supp. at 727 <u>quoting</u> <u>PPX Enterprises., Inc. v. Audiofidelity Enterprises., Inc.</u>, 818 F.2d 266, 272 (2d Cir. 1987).  To establish a false advertising claim under 43(a), the plaintiff must show that the challenged advertisement is either (1) literally false as a factual matter, or (2) literally true but likely to deceive or confuse consumers, and (3) that the defendant misrepresented an inherent quality or characteristic of the product.  <u>National Basketball Assoc. v. Motorola, Inc.</u>, 105 F.3d 841, 855 (2d Cir. 1997).

Plaintiff alleges in its Amended Complaint that Defendant purchases and imports Troll-brand sunflower seeds that are different from the seeds Plaintiff imports in that Defendant's are not "especially seasoned" for the U.S. market.   Plaintiff does not allege that Defendant makes any claims with regard to the Standard Seeds that are false or likely to deceive or confuse consumers, or that Defendant does anything other than import genuine Troll-brand goods.  Defendant's advertisement of the Standard Seeds cannot be literally false because they are genuine goods imported from Troll and sold in their original packaging.  It also cannot be likely

to deceive consumers because consumers purchasing Standard Seeds imported by Defendant are purchasing authentic, genuine Troll-brand sunflower seeds, which are in fact the same sunflower seeds that consumers would expect to be purchasing if they were buying directly from Troll. Lastly, Defendant does not misrepresent any quality or characteristic of the sunflower seeds it imports. The Standard Seeds are genuine Troll-brand sunflower seeds, and Plaintiff does not allege otherwise. Therefore Count III for false advertising under the Lanham Act fails.

### F. There Has Been No Consumer Harm, And Therefore No Deceptive Acts and Practices Under N.Y.G.B.L. (Count IV)

Count IV is for deceptive acts and practices under N.Y.G.B.L. §349 by reason of Defendant's use in commerce of the Two Trademarks in connection with the importation, sale and distribution of the Standard Seeds.

Section 349 (and 350) protects consumers against deceptive trade practices and false advertising and requires a showing that "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000) (per curiam). The Amended Complaint scarcely acknowledges consumers' interests. "It is well-established that 'trademark infringement actions alleging only general consumer confusion do not threaten the direct harm to consumers' for purposes of stating a claim under 349 or 350." Perkins School for the Blind v. Maxi-Aids, Inc., 274 F. Supp.2d 319, 327 (E.D.N.Y. 2003), quoting La Cibeles, Inc. v. Adipar, Ltd., No. 99-Civ-4129, 2000 WL 1253240, at *15 (S.D.N.Y. Sept. 1, 2000). Plaintiff asserts in its Amended Complaint that Plaintiff "is the source [of the sunflower seeds] but that Defendants are representing otherwise." It is not at all clear that consumers would look to Plaintiff as the source of the sunflower seeds rather than the manufacturer and trademark owner, Troll. However, even if this were the case, Plaintiff fails to allege that consumers are harmed. Because

18

Defendant is importing genuine sunflower seeds from Troll, Plaintiff has not and cannot allege that Defendant has engaged in any deceptive practices directed at consumers. Count IV must fail.

**G. There Has Been No Consumer Harm, And Therefore No False Advertising Under N.Y.G.B.L. (Count VI)**

Count VI is for false advertising under N.Y.G.B.L. §350 by reason of Defendant's use in commerce of the Two Trademarks in connection with the advertising, sale, and distribution of the Standard Seeds.

Like a claim under Section 349, discussed *supra*, a claim for false advertising under Section 350 requires that Plaintiff allege conduct that has a broad impact on consumers and that said consumers were injured. See Rodriguez v. It's Just Lunch Int'l, No. 07 Civ. 9227, 2009 WL 399728 (S.D.N.Y. Feb. 17, 2009); Galerie Furstenberg v. Coffaro, 697 F. Supp. 1282, 1291-92 (S.D.N.Y. 1988). As discussed *supra*, Plaintiff does not allege that consumers have been impacted or harmed in any way. Count VI must fail.

**H. There Has Been No Infringement Or Bad Faith, And Therefore No Unjust Enrichment or Grounds for Accounting (Counts V, VIII)**

Count V is for unjust enrichment by reason of Defendant's use in commerce of the Two Trademarks in connection with the importation, sale, and distribution of the Standard Seeds.

Count VIII is for an accounting by Defendant for all of the moneys and other property received by it by reason of Defendant's use in commerce of the Two Trademarks in connection with the importation, sale, and distribution of the Standard Seeds.

An unjust enrichment claim under New York law must contain the following elements: (1) the defendant was enriched; (2) enrichment was at the plaintiff's expense; and (3) the defendant's retention of the benefit would be unjust. Gidatex, S.r.L., v. Campaniello Imports,

Ltd., 49 F. Supp.2d 298, 301 (S.D.N.Y. 1999).  Count V fails because Plaintiff does not allege in its Amended Complaint that Defendant has been enriched.  Furthermore, if Defendant were enriched, such enrichment would only be unjust if its sales of the Standard Seeds were attributable to an infringing use of Plaintiff's trademarks.  W.E. Bassett Co. v. Revlon, Inc., 435 F.2d 656, 663 (2d Cir. 1970).  However, as outlined *supra*, Plaintiff has no proprietary rights in the Two Trademarks and its claims for trademark infringement fail.  Accordingly, Plaintiff's claim for unjust enrichment should fail.

Without unjust enrichment, an action for accounting also fails, if indeed the claim can be considered a claim rather than a proposed remedy.  El Greco Leather Products Co., v. Shoe World, Inc., 726 F. Supp. 25, 27 (E.D.N.Y. 1989).  Furthermore, "[a]n accounting for profits is not appropriate where the infringer…acted in good faith."  Cuisinarts, Inc. v. Robot-Coupe Intern. Corp., 580 F. Supp. 634, 639 (S.D.N.Y. 1984).  Plaintiff does not allege in its Amended Complaint that Defendant acted in bad faith, willfully, or fraudulently.  Absent such allegations, an action for accounting will fail.  See Champion Spark Plug Co. v. Sanders, 331 U.S. 125, 131 (1947) (denying an accounting where there was no showing of fraud or palming off); International Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc., 80 F.3d 749, 753 (2d Cir. 1996) ("In order to recover an accounting of an infringer's profits, a plaintiff must prove the infringer acted in bad faith.").  See also Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co., 145 F.3d 481 (2d Cir. 1998) (stating that in order for a Lanham Act plaintiff to receive damages it must prove either actual consumer confusion or that the defendant's actions were intentionally deceptive); Louis Vuitton Malletier v. Dooney & Bourke, Inc., 500 F. Supp.2d 276 (S.D.N.Y. 2007) (damages cannot be awarded unless willful deception is established).  Counts V and VIII must fail.

## I.     There Has Been No Bad Faith, And Therefore
##        No Unfair Competition Under New York Common Law (Count VII)

Count VII is for unfair competition under New York common law by reason of Defendant's use in commerce of the Two Trademarks in connection with the importation, sale, and distribution of the Standard Seeds.

Under New York law, a plaintiff claiming common law unfair competition must show either actual confusion in an action for damages or a likelihood of confusion where equitable relief is sought.  See W.W.W. Pharm. Co. v. Gillette Co., 984 F.2d 567, 576 (2d Cir. 1993). There must also be some showing of bad faith.  See Saratoga Vichy Spring Co. v. Lehman, 625 F.2d 1037, 1044 (2d Cir. 1980).  The essence of a claim for unfair competition under New York law is the bad faith misappropriation of the labors and expenditures of another.  Computer Associates v. Int'l, Inc. v. Computer Automation, Inc., 678 F. Supp. 424, 429 (S.D.N.Y. 1987). Plaintiff does not allege that Defendant acted in bad faith, and accordingly, Count VII must fail.

## VI.    THE COMPLAINT FAILS TO NAME AN INDISPENSIBLE PARTY
##        AND SHOULD BE DISMISSED

A complaint may be dismissed pursuant to FED. R. CIV. P. 12(b)(7) if it fails to join a necessary party under FED. R. CIV. P. 19.  Rule 19(a)(1) provides that if joinder is feasible, a party must be joined if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may … leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

It is well-established by case law that the trademark owner is a "necessary party" in a trademark infringement action.  "An owner/licensor [] of a trademark is, pursuant Rule 19, required as a necessary party in actions concerning those rights to allow the Court to accord

complete relief and to avoid the risk of multiple or inconsistent obligations or repetitive litigation arising from the same facts." Marrero Enterprises of Palm Beach, Inc. v. Estefan Enterprises, Inc., No. 06-81036-CIV, 2007 WL 4218990, at *2 (S.D. Fla. Nov. 29, 2007). See also Association of Co-Operative Members, Inc. v. Farmland Industries, Inc., 684 F.2d 1134 (5th Cir. 1982); Earl v. Peverett, No. 90 Civ. 5019, 1991 WL 33281 (S.D.N.Y. March 7, 1991); JTG of Nashville, Inc. v. Rhythm Band, Inc., 693 F. Supp. 623 (M.D. Tenn. 1988); Pure Food Products, Inc. v. American Bakeries Co., No. 72 C 2017, 1972 WL 19316 (N.D. Ill. Nov. 28, 1972).

In the instant matter, the owner of the Two Trademarks is the product manufacturer, Troll, from which Plaintiff alleges to have been granted a license for the use of these trademarks. This is so because trademark ownership stems from prior appropriation and use of a mark. Fusco Group, Inc. v. Loss Consultants International, Inc., 462 F. Supp.2d 321, 327 (N.D.N.Y. 2006), citing Time, Inc. v. Petersen Publ'g Co., 173 F.3d 113, 118 (2d Cir. 1974), and La Societe Anonyme des Parfums Le Galion v. Jean Patou, Inc., 495 F.2d 1265, 1270 n. 5 (2d Cir. 1974). This is true regardless of whether the trademarks have been registered because although registration is prima facie evidence of a registrant's ownership, ownership does not stem from registration. Prior appropriation and use establish ownership, and a registration merely recognizes the rights created by that appropriation and use. Fusco Group, 462 F. Supp.2d at 327, citing Time, 173 F.3d at 118, and La Societe Anonyme, 495 F.2d at 1270 n. 5. As pled by Plaintiff in its Amended Complaint, Troll produces and prepares the sunflower seeds using the Two Trademarks to identify its brand. Thus, Troll is the owner of the Two Trademarks, and title to the trademarks and standing to enforce those rights lie with Troll.

Nonetheless, Plaintiff claims that the Agreement has provided it with the right as a "licensee and assignee" of Troll to enforce the Two Trademarks through December 31, 2010.

However, a well-established principle of trademark law that was reinforced by this Court in Trilini II provides that such an agreement presents a Rule 19 problem unless the agreement establishes that the party claiming to have obtained enforcement rights has the right and the standing to enforce the trademark *to the exclusion of the trademark owner.* See Trilini II, 578 F.Supp.2d at 465-66. In Trilini II, the plaintiff produced an agreement establishing that the trademark owner had authorized the plaintiff to bring trademark claims on its behalf. However, the court dismissed the plaintiff's Section 32 claim on grounds of lack of standing because the authorization did not grant plaintiff "exclusive enforcement rights" and therefore "does not prevent [the trademark owner] from bringing a further claim against defendants or any subsequent infringers." Id. at 465-66. In the instant matter, the Agreement attempts to establish that Plaintiff has such rights to the exclusion of Troll. However, as discussed *supra*, the Agreement is not an exclusive agreement on the trademarks themselves. It does not convey to Plaintiff the exclusive right to use and enforce the Two Trademarks, but rather conveys to Plaintiff a limited right to exclusively use the Two Trademarks only with respect to the Especially Seasoned Seeds and to enforce the trademarks so used to the exclusion of Troll. Any rights obtained by Plaintiff under this Agreement are limited to the Especially Seasoned Seeds.

Thus, if valid, the Agreement may give Plaintiff the right to enforce the Two Trademarks to the exclusion of Troll with respect to the Especially Seasoned Seeds. However, it does not give Plaintiff the right to enforce the Two Trademarks as used by Defendant to the exclusion of Troll. Troll has not, through this Agreement, relinquished its right to use or enforce the Two Trademarks in the Geographic Area generally. This is significant because Troll has not relinquished its right to itself import the Standard Seeds or to sue to enforce the Two Trademarks with regard to those products, nor has it relinquished its right to license or assign the right to do

so to another third party.  Consequently, such a third party or Troll itself could sue Defendant on the basis of the facts presented in the Amended Complaint.  Joinder of Troll is therefore necessary to ensure that subsequent infringement claims are not brought against Defendant for these same issues thereby making Defendant "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." FED. R. CIV. P. 19.

Even if Plaintiff and Troll had entered into a valid agreement that conveyed to Plaintiff the exclusive right to enforce the Two Trademarks in the Geographic Area with regard to *any* use of the Two Trademarks, joinder of Troll would still be necessary under Rule 19 because Defendant could not be deemed a third-party beneficiary to such an agreement.  Such an agreement would not actually prevent Troll from bringing suit against Defendant for the claims presented in the instant matter because an agreement between Plaintiff and Troll would be just that: an agreement between Plaintiff and Troll.  Although Plaintiff might have a valid breach of contract claim against Troll if Troll were to breach such an agreement by suing Defendant, that breach would not constitute a defense for Defendant.  Fleischer v. W.P.I.X. Inc., 213 N.Y.S.2d 632, 643 (Sup.Ct. 1961), appeal dismissed 371 U.S. 16 (1962) (affirming that one must be either a party to, or a third-party beneficiary of, a contract in order to sue for its breach). See also Compagnie Nationale Air France v. Port of New York Authority, 427 F.2d 951, 954 (2d Cir. 1970) (affirming that even a third-party who benefits from a contract may not sue for its breach if "the benefit is purely incidental" rather than intended by the parties).  Such a lawsuit would not be invalidated by reason of Troll's breach, and therefore, Defendant would again be subject to a substantial risk of incurring multiple or otherwise inconsistent obligations.

There is no reason why it would be infeasible for Troll, the trademark owner, to participate in this litigation.  Moreover, if Troll is not joined, Defendant's ability to litigate may

potentially be impaired by difficulty in obtaining discovery from Troll with regard to the facts being litigated in this lawsuit, such as the names of entities other than Plaintiff, Defendant, and the other named defendant (T.G.F.) that have purchased and imported sunflower seeds.

Plaintiff's complaint has failed to join the trademark owner, whose participation is feasible and whose presence is indispensible in this action under Rule 19.  Plaintiff's Amended Complaint should therefore be dismissed pursuant to Rule 12(b)(7).

## VII.    CONCLUSION

Based on the foregoing, the Amended Complaint should be dismissed for lack of standing and for failure to state any claim upon which relief can be granted and for failure to join a necessary party.

New York, New York                                 Respectfully submitted,
December 1, 2009
                                                   /Charles H. Knull
                                                   _____
                                                   Charles H. Knull (CHK-1741)
                                                   Linda M. Dougherty (LD-2813)
                                                   ULLMAN, SHAPIRO & ULLMAN, LLP
                                                   299 Broadway, Suite 1700
                                                   New York, NY 10007
                                                   Tel. (212) 571-0068
                                                   Fax  (212) 571-9424

                                                   *Attorneys for Defendant*