Carl E. Person
Attorney for Plaintiff
325 W. 45th Street – Suite 201
New York NY  10036-3803
Telephone:   (212) 307-4444
Facsimile:   (212) 307-0247
carlpers@ix.netcom.com


**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
                                           :                  **ECF CASE**

**ZIP INTERNATIONAL GROUP LLC,**       :

                                       :        **09-cv-2437 (JG) (VVP)**

                   **Plaintiff,**      :

                                       :

             **- against -**       :

                                       :

**TRILINI IMPORTS, INCORPORATED,**   :
**a/k/a TRILINI IMPORTS, and**        :
**TGF PRODUCTION LLC,**             :

                                       :

                   **Defendants.**    :

                                       :
------------------------------------------------------------x


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**<u>DEFENDANT TRILINI'S MOTION TO DISMISS COMPLAINT</u>**


**Dated:  New York, New York**
       **December 25, 2009**


                         **Carl E. Person  (CP 7637)**
                         *Attorney for the Plaintiff,*
                           *ZIP International Group LLC*
                         **325 W. 45th Street - Suite 201**
                         **New York, New York 10036-3803**
                         **Tel:  212-307-4444**
                         **Fax: 212-307-0247**
                         **Email:  <u>carlpers@ix.netcom.com</u>**

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ...................................................2

ARGUMENT....................................................................4

I..    PLAINTIFF HAS STANDING BECAUSE
THE PLAINTIFF HAS ENFORCEABLE
RIGHTS IN THE TWO TRADEMARKS......................................4

II..   THE PLAINTIFF HAS STANDING BECAUSE
THE PLAINTIFF HAS A PROTECTABLE
INTEREST IN THE TWO TRADEMARKS
UNDER § 43(a) OF THE LANHAM ACT ...................................10

III..  THE PLAINTIFF HAS STATED
VIABLE CLAIMS FOR RELIEF .................................................11

A..   Plaintiff Alleges It is an Exclusive Licensee
and the Troll Agreement Shows that the
Plaintiff is a De Factor Assignee of the Two Trademarks.............11

B..   Plaintiff's License is Not Void ...........................................13

C..   Defendant's Importation of "Gray-Market"
Goods Is Not Lawful (Count I)...........................................13

D..   Trilini Is Passing Off the Russian-Market Sunflower
Seeds as ZIP's Sunflower Seeds Flavored for the
U.S. Market (Count II)....................................................15

E..   There is Fraudulent Misrepresentation and Confusion,
Amounting To False Advertising under Federal Law
(Count III) ................................................................16

F..   There is Consumer Harm,  and There Are Deceptive
Acts and Practices under N.Y.G.B.L. (Count IV) ..........................17

i

**TABLE OF CONTENTS (Cont'd)**

**Page(s)**

**G..**   **There is Consumer Harm,  and False Advertising
        Under N.Y.G.B.L. (Count VI)** ............................................................**18**

**H..**   **Trilini Has Infringed ZIP's Two Trademarks Giving
        Rise to Claims for Unjust Enrichment and an
        Accounting (Counts V, VIII)** ............................................................**19**

**I..**   **ZIP's Allegations Amount to Bad Faith Allegations
        (Count VII)** ............................................................**20**

**IV..**   **PLAINTIFF DID NOT FAIL TO NAME ANY
        INDISPENSIBLE OR NECESSARY PARTY** ..............................**20**

**CONCLUSION** ............................................................**24**

# TABLE OF CASES AND AUTHORITIES

**Page(s)**

**Cases:**

*Finance Investment Co. (Bermuda) v. Geberit AG,*
165 F.3d 526, 531 (7th Cir. 1998) ...................................................................8

*G.H. Mumm Champagne v. Eastern Wine Corp.*, 142 F.2d 499
(2nd Cir.1944), *cert. denied*, 323 U.S. 715,
65 S.Ct. 41, 89 L.Ed. 575 (1944) .....................................................................8

*ICEE Distributors, Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586, 598
(5th Cir. 2003)....................................................................................................7

*Gamut Trading Co. v. U.S. Intern. Trade Com'n*, 200 F.3d 775, 779
(Fed. Cir. 1999)..................................................................................................6

*Krasnyi Oktyabr v. T. G. F. Productions, LLC,* No. CV-05-3020,
2008 WL **12-13 4426961 (E.D.N.Y. Sept. 25, 2008).................................5

*Lever Bros. Co. v. U.S.*, 877 F.2d 101, 109 (D.C. App. 1989)......................6

*R.J. Reynolds Tobacco Co. v. Cigarettes Cheaper!,*
462 F.3d 690, 700 (7th Cir. 2006) ....................................................................6

*Ultrapure Systems, Inc. v. Ham-Let Group*, 921 F.Supp. 659, 665-666
(N.D.Cal.1996) ..................................................................................................8

**Statutes:**

Lanham Act, 15 U.S.C. § 1125(a)(1)(B) [or § 43(a)].........................8, 10, 16

New York General Business Law .........................................................17, 18

## TABLE OF CASES AND AUTHORITIES (Cont'd)

**Page(s)**

**Rules:**

Federal Rules of Civil Procedure

Rule 12(b)(1) ...............................................................................1

Rule 12(b)(6) ...............................................................................2

Rule 12(b)(7) ..........................................................................2, 24

Rule 19...............................................................................2, 21, 24

ZIP_Mot2_MEMO_in_Opp_FINAL.com

Carl E. Person
Attorney for Plaintiff
325 W. 45th Street – Suite 201
New York NY 10036-3803
Telephone: (212) 307-4444
Facsimile: (212) 307-0247
carlpers@ix.netcom.com

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x

|  |  |
|---|---|
| : | **ECF CASE** |
| **ZIP INTERNATIONAL GROUP LLC,** | : |
| : | **09-cv-2437 (JG) (VVP)** |
| **Plaintiff,** | : |
| : | |
| **- against -** | : |
| : | |
| **TRILINI IMPORTS, INCORPORATED,** | : |
| **a/k/a TRILINI IMPORTS, and** | : |
| **TGF PRODUCTION LLC,** | : |
| : | |
| **Defendants.** | : |
| : | |

-----------------------------------------------------------------x

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT TRILINI'S MOTION TO DISMISS COMPLAINT**

This memorandum of law is being submitted by ZIP International Group

LLC ("ZIP" or the "Plaintiff") in opposition to the motion of Trilini Imports,

Incorporated ("Trilini" or "Defendant") to dismiss the complaint under (i) Fed. R.

Civ. P. 12(b)(1) (lack of standing); (ii) Fed. R. Civ. P. 12(b)(6) (failing to state a

1

claim upon which relief may be granted); and (iii) Fed. R. Civ. P. 12(b)(7) and 19 (failing to join a necessary party).

## PRELIMINARY STATEMENT

ZIP independently, without any agreement with Russian manufacturer Troll, is the owner of two common law trademarks being infringed by Trilini. In addition, ZIP has subsequently been given an exclusive license by Troll as to Troll's rights, if any, to use the two trademarks in the United States, with full recognition of ZIP's prior common law trademark rights in such agreement.

Trilini is a marketer of gray goods that it imports, to try to avoid the protection afforded by trademark law in the United States. For good and sufficient commercial reason, the Russian manufacturer has seen fit to permit the Plaintiff to exercise full control over its interest in the two trademarks in the United States.

Trilini is trying very hard to prevent the Plaintiff and Russian manufacturer from enjoying the benefits of the two trademarks in the United States.

Plaintiff is not trying to monopolize the sale of any product. Plaintiff is seeking to stop the Defendant from using the trademarks. Defendant is free to market its imported sunflower seeds if it does so under different trademarks.

The Plaintiff has both commonlaw trademarks and an exclusive license from the owner of the Russian trademarks. By reason of both the two common law trademarks and the exclusive license of the two Russian trademarks, Trilini is not

able to use the trademarks for sunflower seeds of any type without infringing the Plaintiff's rights. Trilini's argument that the manufacturer did not license its two trademarks for the Plaintiff to sell the Russian-taste sunflower seeds is specious because having licensed the Plaintiff to sell one type of sunflower seed under the two trademarks the Russian manufacturer is precluded from licensing anyone but the Plaintiff to sell the Russian-taste sunflower seeds under the two trademarks in the United States, if it has any right to do so because of the prior existence of ZIP's two common law trademarks.

On September 28, 2009, the Plaintiff entered into a letter agreement with the Russian manufacturer providing as follows:

> This is to confirm our understanding and agreement that OOO Troll Co. (the "Manufacturer"), as owner of the trademarks OOO TROLL and Бабкины Семечки (the "Two Trademarks"), has granted an exclusive license for ZIP International Group LLC and each of its subsidiaries and affiliates (hereinafter, "ZIP") to use the Two Trademarks in the United States, Guam, Puerto Rico, Virgin Islands, Canada, Mexico and all other parts of North America (the "Geographic Area") with respect to the importation, distribution, marketing and sale of sunflower seeds especially seasoned by the Manufacturer for the Geographic Area (the "Licensed Product"), and as part of these rights ZIP is hereby authorized, exclusively, to enforce each of the Two Trademarks through the commencement and maintenance of trademark infringement actions or proceedings for injunctive, monetary and other relief, and to assert in any such actions all rights of the Manufacturer and ZIP relating to each of the Two Trademarks, including any prior infringements occurring starting on the Effective Date. Also, the Manufacturer agrees that the Manufacturer has no right to enforce the Two Trademarks as to any infringements occurring in the Geographic Area during the period of this agreement.

> The Two Trademarks are not registered in the United States.

> ZIP is the first to be licensed by the Manufacturer to use either of the Two Trademarks in any part of the Geographic Area for the Licensed Product.

The Manufacturer understands and accepts that ZIP, by its first use of each of the Two Trademarks in various parts of the Geographic Area starting in 2007 has itself acquired and claims a commonlaw trademark as to each of the Two Trademarks.

This agreement shall be effective as of January 1, 2007 (the "Effective Date") and shall be effective through December 31, 2010, with any renewal to be made by mutual agreement of the parties.

The Manufacturer and ZIP hereby agree to the terms of this agreement by their execution of this document below, either as one document or in counterpart documents.

## ARGUMENT

## I.. PLAINTIFF HAS STANDING BECAUSE THE PLAINTIFF HAS ENFORCEABLE RIGHTS IN THE TWO TRADEMARKS

At pages 4-10 of its memorandum, Trilini argues that the Plaintiff has no enforceable rights in the Two Trademarks. The Troll Agreement dated September 28, 2009 (see text quoted above, the "Troll Agreement") makes it clear that the Plaintiff is the owner of all rights to the Two Trademarks, including the right of exclusive enforcement of the trademarks, including prior infringements, for a 4-year period ending December 31, 2010. Under the Troll Agreement, there is nobody else who has the right to enforce the Two Trademarks through the period ending December 31, 2010.

The Plaintiff not only is the owner of all rights to the Russian trademarks for the U.S. market, but has its own independent commonlaw trademarks for the same goods and therefore another basis for standing.

Plaintiff alleges, in ¶¶ 16-17 of its amended complaint:

> 16. ZIP was the first person to market sunflower seeds in any part of the United States or Canada using either of the Two Trademarks.
>
> 17. By reason of its activities, as alleged, ZIP has a common law trademark under New York law and under the law of each of the other states in which ZIP has been and continues to market the Sunflower Seeds using the Two Trademarks.  This interest is in addition to the Plaintiff's interest under the Troll Agreement.

In his decision in *Krasnyi Oktyabr v. T. G. F. Productions, LLC*, No. CV-05-3020, 2008 WL **12-13 4426961 (E.D.N.Y. Sept. 25, 2008), Judge Trager stated:

> In <u>Visa U.S.A., Inc. **v**. First Data Corp.</u>, No. C 02-01786, 2005 U.S. Dist. LEXIS 37276, at *13-15 (N.D. Cal. Aug. 16, 2005), the court found that in order for a non-exclusive licensee to sue as legal representative it must have "exclusive enforcement rights to the disputed marks."

The Plaintiff has the exclusive right to sue (and exclusive enforcement rights), not only by reason of the Troll Agreement, but by reason of the Plaintiff's prior commonlaw rights to the marks.  The Russian manufacturer has no right to license anyone else to use its trademarks in the U.S. for sunflower seeds with any type of seasoning because this would be in breach of the above exclusive license agreement giving Plaintiff the exclusive right to the trademarks for the U.S. seasoning.

5

Taste is not an element of trademark rights and should be disregarded when determining the product for which a trademark is granted or licensed.  See *R.J. Reynolds Tobacco Co. v. Cigarettes CheaperA*, 462 F.3d 690, 700 (7th Cir. 2006) ("taste" was not relevant to any of the trademarks).

Taste, however, is relevant to consumer confusion and loss of goodwill. The Federal Circuit Court of Appeals in *Gamut Trading Co. v. U.S. Intern. Trade Com'n*, 200 F.3d 775, 779 (Fed. Cir. 1999) held:

> Thus in Societe Des Produits Nestle v. Casa Helvetia, Inc., 982 F.2d 633, 25 USPQ2d 1256 (1st Cir.1992) the court held that the foreign owner of the United States trademark "Perugina" and its Puerto Rican subsidiary that imported Italian-made "Perugina" chocolate could prevent the importation of "Perugina" chocolate made under license in Venezuela, because the product is materially different in taste; the court referred to the likelihood of consumer confusion and loss of goodwill and integrity of the mark.

The importation of gray goods (identical goods made by a foreign manufacturer under the same trademark) does not necessarily give rise to trademark infringement.  Trademark infringement arises when the goods are different.

In *Lever Bros. Co. v. U.S.*, 877 F.2d 101, 109 (D.C. App. 1989), the Court held:

> Where the goods bearing a foreign trademark valid abroad are physically different from the US trademarked goods, however,

6

courts have indicated a readiness to find infringement. In Original Appalachian Artworks, Inc. v. Granada Electronics, Inc., 816 F.2d 68 (2d Cir.1987), the American trademark holder licensed a Spanish firm to make Cabbage Patch dolls and to sell them in Spain, the Canary Islands, Andorra and Ceuta Mellila. While the dolls of the US trademark owner contained English-language "adoption papers," which could be filled in and would lead to receipt of a birthday card from the US firm on the doll's "birthday," those of the Spanish licensee had Spanish-language "adoption papers" and seemingly lacked any equivalent of the birthday card system. A third-party imported and sold the Spanish version at about half the price of the US doll. The court found a violation of § 32(1)(a) of Lanham Act, 15 U.S.C. § 1114(1)(a) (1982), which prohibits use of a trademark where it "is likely to cause confusion, or to cause mistake, or to deceive." 816 F.2d at 70, 70-72. Dial Corp. v. Encina Corp., 643 F.Supp. 951 (S.D.Fla.1986), also granted relief under § 32 against a firm importing goods produced abroad under a geographically limited license and physically distinct from those of the US trademark holder. Compare Weil Ceramincs & Glass, Inc. v. Dash, 878 F.2d 659, 668 n.11 (3rd Cir. 1989) (holding importation of identical gray market goods did not constitute infringement under § 42, but expressly resting on absence of finding that goods were materially different).

The cases cited at page 7 by Trilini concerning licensing with geographical restrictions are not applicable.  Many of these cases were for licenses in parts or regions of the United States, unlike ZIP's exclusive license for the whole United States.  See *ICEE Distributors, Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586, 598 (5th Cir. 2003) (licensor continued to require quality control or cease using mark; required licensee to notify licensor of infringements and aid licensor in investigating infringements).  *Finance Investment Co. (Bermuda) v. Geberit AG*,

165 F.3d 526, 531 (7th Cir. 1998) (quasi-exclusive regional license with licensor

retaining certain rights to the mark).

In *Ultrapure Systems, Inc. v. Ham-Let Group*, 921 F.Supp. 659, 665-666

(N.D.Cal.1996), the court held there was standing when the owner of the mark

gave an exclusive license to the plaintiff and did not reserve for the owner the right

to sue.  The Court stated:

> Thus, the contract gives exclusive use of the trademarks in the
> U.S. to the licensee. Further, the contract does not set forth any
> *666 restrictions on the licensee's ability to enforce the
> trademarks. Under these circumstances, Ultrapure, as an
> exclusive licensee, does have a property interest in the trademark
> and qualifies as an assignee or successor of the registrant. See
> Shoney's, Inc., 686 F.Supp. at 563; G.H. Mumm Champagne v.
> Eastern Wine Corp., 142 F.2d 499 (2nd Cir.1944), cert. denied,
> 323 U.S. 715, 65 S.Ct. 41, 89 L.Ed. 575 (1944); see also Jerome
> Gilson, Trademark Protection and Practice § 8.16[1][b].
> Therefore, Ultrapure does have standing to enforce the GAZEL
> mark against Defendants. Accordingly, Defendants' motion to
> dismiss Ultrapure's infringement claim is DENIED.

In *G.H. Mumm Champagne v. Eastern Wine Corp.* , 142 F.2d 499 (2nd

Cir.1944), cert. denied, 323 U.S. 715, 65 S.Ct. 41, 89 L.Ed. 575 (1944), a pre-

Lanham Act case, the Second Circuit held:

> The second objection: that the Delaware company has no interest
> to protect, is without substance. We have not to deal with the
> absence of the 'owner' of the 'title' to the trade-mark- whatever
> meaning may attach to those much used, and much abused,
> words. The French company is not an 'indispensable' party; the
> Delaware company speaks in its own interest, which is quite
> separate. It has a monopoly of the sale of Mumm's champagne in

the eastern part of the United States, which substitutions of the defendant's wine will directly invade. Sales effected by such substitutions are sales of which it is deprived; and that is the only interest which ever, or substantially ever, supports such actions.

In summary, ZIP has a de facto ownership of the Russian manufacturer's trademarks in the United States and has the right to enforce them against any infringer, even against the Russian manufacturer-licensor.   The Russian manufacturer-licensor has no right to license any other person to distribute sunflower seeds in the United States because this right has already by exclusively licensed to ZIP.  It would be an infringement of the exclusively-licensed trademarks for anyone, including the Russian manufacturer, to sell sunflower seeds (seasoned or not, or with any type of seasoning) in the United States.  Only ZIP has the right to sue for infringement.  Also, it should be noted throughout this memorandum, ZIP has the prior ownership itself of such two trademarks in the United States, as an independent basis for this lawsuit.

If ZIP's is not permitted to sue Trilini for infringement, there would be nobody having the right to sue.

Because of this, ZIP has what in effect is an assignment of the two trademarks for a defined period and, therefore, is a de facto assignee authorized to commence this trademark enforcement action.  [This de facto assignment is a

9

trademark interest in the two trademarks over and above ZIP's existing common law trademark interest in the two trademarks.]

As de factor assignee of the two trademarks, ZIP has not given up its common law trademark rights.

## II..   THE PLAINTIFF HAS STANDING BECAUSE THE PLAINTIFF HAS A PROTECTABLE INTEREST IN THE TWO TRADEMARKS UNDER § 43(a) OF THE LANHAM ACT

At pages 9-10 of its memorandum, Trilini argues that the Plaintiff has no protectable interest because Trilini is importing and selling another Troll product. Trilini is wrong in arguing (at page 10) that ZIP's agreement with Troll does not grant ZIP any interest in the two trademarks as to Trilini's imported product.  ZIP has been granted the exclusive right to the trademarks as to sunflower seeds and the exclusive right to enforce the two marks, which includes the right to exclude infringers such as Trilini.  Trilini points to no agreement from Troll stating that it has any trademark rights in the two marks.  Instead, Trilini is importing gray goods with the risk that it is infringing ZIP's trademark rights granted by Troll. This is exactly the case.  ZIP has the right to exclude Trilini, Troll and any others from selling sunflower seeds making use of the two trademarks.  ZIP is the only person having enforcement rights, and they extend even to excluding and suing Troll.

Troll even acknowledges in the Troll Agreement ZIP's prior use and ownership of common law trademark rights for the two trademarks.


The Troll Agreement provides the Plaintiff with a reasonable interest to be protected.  Plaintiff's interest is more than preventing competitors from marketing and selling genuine competitive goods.

It should be noted that Trilini's goods are not genuine goods.  They are sunflower seeds flavored by Troll with a different flavor, applicable to the Russian market.  Plaintiff is importing goods with a different flavor, designed by Troll for the United States market.

Thus, the goods are not "genuine competitive goods" when sold under the same trademark.  The use of the Two Trademarks by Trilini in interstate commerce is likely to confuse or deceive consumers as to the quality of the goods, by representing through the trademark that they are from the same source (Troll).

Accordingly, Counts II, III and VII should not be dismissed for lack of standing.


**III..  THE PLAINTIFF HAS STATED
VIABLE CLAIMS FOR RELIEF**

**A..  Plaintiff Alleges It is an Exclusive Licensee
and the Troll Agreement Shows that the
Plaintiff is a De Factor Assignee of the Two Trademarks**

ZIP has shown above that it is the de facto assignee of the Two Trademarks and as such has the right to sue for infringement of its common law trademarks, whether or not the common law marks are merged with the exclusive license of Troll's common law marks.  ZIP's marks have not merged because ZIP has not acknowledged that Troll owns ZIP's two common law trademarks, but instead Troll recognized that they are outstanding and were created first, and continue to exist.

The exclusive licensing of the Troll trademarks as to sunflower seeds with any "taste" variation necessarily is the licensing of the two trademarks as to all flavors of sunflower seeds because of the inability to directly trademark flavor or taste, but only to trademark the words used to describe flavor or taste.  Thus, Trilini is free to obtain a trademark on words used to describe the taste or flavor of its imported sunflower seeds but is not permitted to use the Troll trademarks for sunflower seeds because these two trademarks have already been exclusively licensed to ZIP for the United States (and elsewhere in North America), in what amounts to a de facto assignment of the trademarks.

Trilini is free to sell the imported sunflower seeds describing their taste (for the Russian domestic market) as long as it does not use the two trademarks.  What Trilini is trying to do is use the Russian trademarks licensed to ZIP to sell

sunflower seeds to consumers expecting the seeds to have the flavor or taste being distributed by ZIP, by infringing use of ZIP's two trademarks.

ZIP's Count I (Infringement of Common Law Trademarks) should not be dismissed.

## B..  Plaintiff's License is Not Void

Troll made a de facto assignment of the Two Trademarks to the Plaintiff and the right to (and obligation for) quality control was assigned to the Plaintiff as a result.  The relevant exclusive licensing language is:

> ZIP is hereby authorized, exclusively, to enforce each of the Two Trademarks through the commencement and maintenance of trademark infringement actions or proceedings for injunctive, monetary and other relief, and to assert in any such actions all rights of the Manufacturer and ZIP relating to each of the Two Trademarks, including any prior infringements occurring starting on the Effective Date.

## C..  Defendant's Importation of "Gray-Market" Goods Is Not Lawful (Count I)

The gray goods (or parallel imports) being imported into the United States market by Trilini are different (due to seasoning or taste) than the sunflower seeds being marked in the United States by ZIP under exclusive license from Troll.  If Trilini were buying in Russia and importing sunflower seeds flavored for the U.S.

market, Trilini's argument would be appropriate.  But this is not the case.  Trilini's imported goods, although genuine (in the sense of having been manufactured by Troll under Troll's two trademarks), are not the same product as ZIP is selling in the United State, and creates confusion among consumers and retailers and wrongfully diverts sales from ZIP.

If Trilini did not sell the imported sunflower seeds under the two trademarks Trilini's activities would be lawful.  But as long as Trilini uses ZIP's two exclusively-licensed trademarks to market their Russian-market sunflower seeds, Trilini is infringing the two trademarks in the United State and causing substantial injury to ZIP.

ZIP has alleged a likelihood of confusion of U.S. customers based on a "material difference" between ZIP's imported sunflower seeds (flavored for the U.S. market) and Trilini's imported sunflower seeds (flavored for the Russian domestic market).

ZIP, under its exclusive right to enforce the two trademarks for its U.S. seasoned sunflower seeds (as well as ZIP's independent, prior creation and ownership of the two marks as common law trademarks), has the right to sue Trilini for infringement because Trilini's activities amount to the offering and sale of sunflower seeds of a different quality than ZIP is selling, causing market

confusion and loss of sales for ZIP, and a dilution of the exclusively-licensed

trademarks as well as ZIP's own common law trademarks.

**D..    Trilini Is Passing Off the Russian-Market Sunflower Seeds as
        ZIP's Sunflower Seeds Flavored for the U.S. Market (Count II)**

Count II is for unfair competition, false representations, and false

designation of origin.

The two trademarks identify ZIP as the source of the sunflower seed

product. Trilini, by using the two trademarks, is passing off itself as ZIP, and

having customers purchase the Russian-market sunflower seeds thinking that the

source of such seeds is ZIP (known to be distributing sunflower seeds seasoned for

the U.S. market).

ZIP is entitled to maintain this action against Trilini for unfair competition,

false representations and false designation of origin.  Trilini is falsely designating

ZIP as the source of Trilini's imported seeds by using ZIP's two exclusively-

licensed trademarks.

Trilini does not have to state that ZIP is the source of Trilini's sunflower

seeds.  By using the two trademarks exclusively licensed to ZIP, Trilini is falsely

representing to the marketplace that ZIP is the source of its sunflower seeds.

**E..**    **There is Fraudulent Misrepresentation and Confusion,**
**Amounting To False Advertising under Federal Law (Count III)**

Count III is for false advertising under 15 U.S.C. § 1125(a)(1)(B) by reason

of Trilini's use in commerce of the Two Trademarks in connection with Trilini's

advertising, sale and distribution of sunflower seeds using ZIP's exclusively-

licensed two trademarks.

Because the two trademarks are being used by ZIP to market their sunflower

seeds flavored for the U.S. market (a quality issue), the use of such marks by

Trilini is a representation that the quality is the same (i.e., flavored for the U.S.

market, or flavored in the way being marketed by ZIP). But this is a false

representation because Trilini's sunflower seeds are flavored for the domestic

Russian market and are not the quality of sunflower seed being marketed by ZIP

under the two trademarks.  Consumers are likely to be confused by Trilini's use of

ZIP's trademarks under these circumstances.  Also, by use of ZIP's trademarks,

Trilini is misrepresenting a characteristic of the product (i.e., misrepresenting that

the product is seasoned for the U.S. market and not the Russian domestic market).

Accordingly, Count III states a claim.

**F..    There is Consumer Harm,  and There Are Deceptive
Acts and Practices under N.Y.G.B.L. (Count IV)**

ZIP has alleged that customers are buying sunflower seeds from Trilini

believing that they buying sunflower seeds flavored for the U.S. Market. This is

not a general confusion, but a specific confusion as to quality of product, causing

injury to ZIP.  ZIP has alleged in its amended complaint:

> 21. Since the Defendants purchase and import their seeds from
> the supply for the internal Russian market, they are diluting in
> the United States and Canada the quality of the product being
> marketed by ZIP using the Two Trademarks.
>
> 22. By reason of Defendants' importation and distribution of
> Sunflower Seeds using the Two Trademarks, Plaintiff has
> suffered and is continuing to suffer substantial monetary
> damages, and the loss of its substantial investment in the Two
> Trademarks.
>
> 23. By using the Two Trademarks, the Defendants are
> misrepresenting to consumers the source of the sunflower seeds
> the Defendants are distributing.  Plaintiff as exclusive licensee
> and assignee of the Two Trademarks is the source, but
> Defendants are representing otherwise through their use of the
> Two Trademarks.
>
> 24. By reason of the defendants' activities, ZIP is being
> threatened with being unable to fill its contractual obligations to
> OOO TROLL for 2009, which could result in Troll's failure to
> renew the exclusive licensing and assignment agreement.  Under
> the terms of ZIP's exclusive contract with the manufacturer, ZIP
> must purchase from the manufacturer 100 tons of sunflower
> seeds in the amount of $2,000,000 per year.
>
> 25. By reason of the Defendants' activities of illegally importing
> and distribution the product bearing the Two Trademarks, ZIP

may not be able to fulfill its obligations to OOO Troll and faces a possible non-renewal of its exclusive license and trademark assignment agreement.

26. The loss of said license and assignment, as alleged above, would cost the Plaintiff a loss of millions of dollars, for which Defendants are liable to the Plaintiff.

Accordingly, ZIP states a claim for relief in Count IV for deceptive acts and practices under the New York General Business Law.

## G..   There is Consumer Harm,  and False Advertising Under N.Y.G.B.L. (Count VI)

Consumers have been harmed because they are purchasing sunflower seeds flavored for the Russian domestic market believing that the seeds have been flavored for the U.S. market.  The customers are not getting what they thought they were getting because of Trilini's use of the two trademarks exclusively licensed to ZIP.  Consumers have been spending millions of dollars buying the wrong product.

ZIP states a claim in Count VI for false advertising under the New York General Business Law.  Trilini's use of ZIP's two trademarks for Trilini's confusing gray goods is false advertising.

H..    **Trilini Has Infringed ZIP's Two Trademarks Giving Rise to
Claims for Unjust Enrichment and an Accounting (Counts V, VIII)**

ZIP has alleged in Count 5 that Trilini has been unjustly enriched. Each of

paragraphs 48-50 in Count 5 makes that statement, as follows:

**As and for a Fifth Cause of Action against Both Defendants**

**(Unjust Enrichment)**

47. Plaintiff repeats and realleges ¶¶ 1 through 31 above, as if
fully set forth herein.

48. Defendants' acts resulted in their unjustified, unlawful
receipt of money and profits at the expense of the Plaintiff, in an
amount not presently known but, upon information and belief,
exceeds $500,000.

49. By reason of the unlawful activities of Defendants, they were
unjustly enriched in the amount of $500,000 or more.

50. Plaintiff is entitled to recover from Defendants $500,000 or
more, representing the amount by which Defendants  have been
unjustly enriched by their activities, together with pre-judgment
interest and attorneys' fees.

Plaintiff alleged in paragraph 48 that the enrichment was at the Plaintiff's

expense.  Also, Plaintiff has demonstrated above that the unjust enrichment was

caused by Trilini's infringement of ZIP two exclusively-licensed trademarks.

Trilini's actions were alleged to be willful, as follows:

59. Defendants knew or should have known of the rights of the
Plaintiff as to the Two Trademarks. And have acted with

conscious indifference and utter disregard of, and with the intent
to interfere with, such rights and to deceive and defraud the
purchasing public.

By reason of this, the Plaintiff is entitled to an accounting.  Plaintiff has

made a showing of palming off and deception.

Accordingly, Counts V and VIII state a claim.

**I.. ZIP's Allegations Amount to Bad Faith Allegations (Count VII)**

ZIP has alleged actual confusion as well as a likelihood of confusion.

In ¶ 53 of its amended complaint, ZIP alleged:

53. The representations made by Defendants in the State of New
York, as set forth above, including the delivery of the product
passed off to purchasers that Plaintiff is the source, are false and
misleading in material respects and will deceive and induce
purchasers to purchase the Defendants' product.

Paragraphs 53 and 59 amount to bad faith allegations.

Accordingly, Count VII states a claim.

**IV.. PLAINTIFF DID NOT FAIL TO NAME ANY
INDISPENSIBLE OR NECESSARY PARTY**

Trilini argues (at pages 21-25 of its memorandum) that Plaintiff is merely a

licensee of Troll and as a result "It does not convey to Plaintiff the exclusive right

to use and enforce the Two Trademarks" and that any rights are limited to the

sunflower seeds flavored for the U.S. Market.

The Troll Agreement provides in relevant part:

> ZIP is hereby authorized, exclusively, to enforce each of the Two
> Trademarks through the commencement and maintenance of
> trademark infringement actions or proceedings for injunctive,
> monetary and other relief, and to assert in any such actions all
> rights of the Manufacturer and ZIP relating to each of the Two
> Trademarks, including any prior infringements occurring starting
> on the Effective Date.  Also, the Manufacturer agrees that the
> Manufacturer has no right to enforce the Two Trademarks as to
> any infringements occurring in the Geographic Area during the
> period of this agreement.

The Troll Agreement makes it clear that Troll has no right to enforce either

of the Two Trademarks and is not a necessary or indispensable party in this

litigation.

Rule 19, F.R.Civ.P. , does not require joinder of Troll because complete

relief among the existing parties can be provided without Troll.  Also, there is no

risk that Troll will sue Trilini for infringement of the Two Trademarks because

Troll has assigned all enforcement rights of its two marks (as to sunflower seeds)

to ZIP.  The two marks were already owned by the Plaintiff as the first user of such

marks.  Paragraphs 16-17 of the amended complaint alleges:

> 16. ZIP was the first person to market sunflower seeds in any
> part of the United States or Canada using either of the Two
> Trademarks.

21

17. By reason of its activities, as alleged, ZIP has a common law trademark under New York law and under the law of each of the other states in which ZIP has been and continues to market the Sunflower Seeds using the Two Trademarks.  This interest is in addition to the Plaintiff's interest under the Troll Agreement.

The Troll Agreement provides in relevant part:

    * * * ZIP is hereby authorized, exclusively, to enforce each of the Two Trademarks through the commencement and maintenance of trademark infringement actions or proceedings for injunctive, monetary and other relief, and to assert in any such actions all rights of the Manufacturer and ZIP relating to each of the Two Trademarks, including any prior infringements occurring starting on the Effective Date.  Also, the Manufacturer agrees that the Manufacturer has no right to enforce the Two Trademarks as to any infringements occurring in the Geographic Area during the period of this agreement.

    The Two Trademarks are not registered in the United States.

    ZIP is the first to be licensed by the Manufacturer to use either of the Two Trademarks in any part of the Geographic Area for the Licensed Product.

    The Manufacturer understands and accepts that ZIP, by its first use of each of the Two Trademarks in various parts of the Geographic Area starting in 2007 has itself acquired and claims a commonlaw trademark as to each of the Two Trademarks. [Emphasis added.]


Because of (i) the de facto assignment of Troll's two trademarks to ZIP, including all rights of enforcement, (ii) Trilini's infringement of the two trademarks by sale of sunflower seeds manufactured with seasoning for the Russian domestic market, and (iii) ZIP's prior use and ownership of the two

trademarks, Troll is not an indispensable party in this litigation.  As de facto assignee of the two trademarks, ZIP is entitled to maintain this action against Trilini.  Also, independently, as owner of the two common law trademarks prior to any use by anyone else in the United States, ZIP has the right to enforce the two trademarks against Trilini as if Troll and its two trademarks were non-existent.

Troll has the right to sell sunflower seeds seasoned for the Russian market to anyone, including Trilini, and Trilini has the right to import such seeds into the United States, but it has no right to use the two trademarks to distribute the imported seeds because of the confusion this creates as to whether the imported seeds are of the same quality (seasoning) as the sunflower seeds being marketed under the two trademarks by ZIP.  ZIP has spent $150,000 per year in the marketing of its sunflower seed product (seasoned for the U.S. market), and has alleged in its amended complaint:

> 19.  ZIP has spent approximately $150,000 per year including advertising, salaries and other marketing expenses to build the market for the Sunflower Seeds in New York City, elsewhere in New York State and throughout the rest of the United States.

Trilini is taking advantage of this expenditure, by using the two trademarks, to divert sales to itself as to customers thinking that ZIP was the source of the goods being sold by Trilini.

Troll has no right under the Troll Agreement to license anyone to sell sunflower seeds in the United States because this would infringe the two trademarks exclusively licensed to ZIP, and would also be a knowing violation by Troll of  ZIP's prior common law rights to the same two trademarks, which rights are clearly set forth in the Troll Agreement.

Accordingly, Troll is not an indispensable or necessary party in this litigation and the action should not be dismissed under Rules 12(b)(7) and 19.

## CONCLUSION

For the reasons set forth above, the Plaintiff respectfully requests that the Defendant's motion be denied in its entirety.

**Dated:  New York, New York**
**December 25, 2009**

_____
**Carl E. Person  (CP 7637)**
*Attorney for the Plaintiff,*
*     ZIP International Group LLC*
**325 W. 45th Street - Suite 201**
**New York, New York 10036-3803**
**Tel:  212-307-4444**
**Fax: 212-307-0247**
**Email:  carlpers@ix.netcom.com**