UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
ZIP INTERNATIONAL GROUP, LLC,

                     Plaintiff,

      -against-

TRILINI IMPORTS, INC., a/k/a TRILINI
IMPORTS, and TGF PRODUCTION, LLC,

                    Defendants.
----------------------------------------------------------------x

ONLINE PUBLICATION ONLY

MEMORANDUM AND ORDER

09-CV-2437 (JG) (VVP)

A P P E A R A N C E S:

    CARL E. PERSON
        325 West 45th Street, Suite 201
        New York, New York 10036
        *Attorney for Plaintiff*

    ULLMAN, SHAPIRO & ULLMAN, LLP
        299 Broadway, Suite 1700
        New York, New York 10007
    By:   Charles H. Knull
        Linda M. Dougherty
        *Attorneys for Defendant Trilini Imports, Inc.*

JOHN GLEESON, United States District Judge:

       Zip International Group, LLC, claiming to be the exclusive United States distributor and licensee of a Russian brand of sunflower seeds, brings this suit against a competitor, Trilini Imports, Inc. Trilini buys seeds of the same brand intended for sale to consumers in Russia and instead resells them in the United States, a practice informally referred to as "gray market" importing. According to Zip, Trilini is infringing Zip's trademark rights and misrepresenting the source of its seeds in violation of the Lanham Act, 15 U.S.C. § 1114 *et seq.*, and New York law. Zip seeks injunctive relief, compensatory and punitive damages, and attorney's fees. Trilini moves to dismiss Zip's complaint under Federal Rule of Civil Procedure

12(b) for lack of subject-matter jurisdiction, failure to state a claim, and failure to join an indispensable party.  For the reasons discussed below, the motion is denied.

BACKGROUND

The following allegations are taken from Zip's complaint.

Since 2007, Zip has sold sunflower seeds processed by OOO Troll Co. ("Troll"), a Russian company, in the United States under Troll's trademark.  Zip's sales to date have totaled $3 million, and it spends roughly $150,000 per year to market and advertise the seeds. On September 28, 2009, Zip and Troll agreed in writing that: (1) Zip has an exclusive license to use Troll's trademarks in North America with respect to the importation, distribution, marketing, and sale of sunflower seeds specially seasoned by Troll for the North American market; (2) Zip has the sole right, to the exclusion of Troll, to enforce Troll's trademarks in North America; and (3) Zip has acquired a common law trademark in Troll's marks by virtue of its status as the first to market Troll's seeds in the United States and other parts of North America.  The agreement is retroactively effective as of January 1, 2007 and expires on December 31, 2010.

Although Trilini knows or should know of Zip's exclusive United States license to the Troll mark, Trilini nevertheless buys Troll seeds in Russia, which are intended for sale in Russia, and sells them in the United States under the Troll trademark.  Because the seeds Trilini imports are inferior to those intended for the North American market, which are produced according to a special recipe with higher quality ingredients, Trilini's sale of the seeds is confusing consumers and damaging Zip's goodwill.  As a result of Trilini's competing sales, Zip is at risk of failing to sell the 100 tons of seeds it is obligated to purchase annually from Troll under their exclusive licensing agreement and Troll may choose not to renew the agreement when it expires.

DISCUSSION

Trilini moves to dismiss on three grounds: (1) lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1); (2) failure to state a claim under Federal Rule of Civil Procedure 12(b)(6); and (3) failure to join an indispensable party under Federal Rule of Civil Procedure Rule 12(b)(7).

A. *Subject-Matter Jurisdiction*

Trilini argues that this Court lacks subject-matter jurisdiction to hear this dispute because Zip does not have standing to assert infringement claims under either federal or state law. A federal court may exercise jurisdiction over an action only if a plaintiff meets the standing requirements imposed by Article III's limitation of the judicial power of the United States to "cases" or controversies." *See Bennett v. Spear*, 520 U.S. 154, 167 (1997). To have constitutional standing, a plaintiff must allege that (1) she has suffered or imminently will suffer an injury; (2) the injury is fairly traceable to the defendant's conduct; and (3) the injury likely will be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Zip has satisfied this requirement. It has alleged that its sales of sunflower seeds are suffering because Trilini is unfairly profiting from the goodwill Zip has built up as the exclusive United States licensee of the Troll mark by selling seeds under that mark without authorization. And the relief Zip seeks -- compensatory damages and an injunction barring Trilini from selling seeds under the Troll mark in the United States -- would redress its alleged injury. Trilini's motion to dismiss the complaint under Rule 12(b)(1) is denied.

Trilini's contention that Zip, as a mere licensee of trademarks owned by Troll, does not have standing to bring an enforcement action is better cast as an argument that the complaint should be dismissed for failure to state a claim because Zip lacks statutory standing.

Consequently, I consider this argument below as one made in support of Trilini's motion under Rule 12(b)(6).

B.   *Failure to State a Claim*

   1.   *Legal Standard*

   When deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *See Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  A claim is facially plausible if the pleaded facts permit a court to reasonably infer that the defendant is liable for the alleged misconduct.  *Id.*

   2.   *Analysis*

       a.   *The Lanham Act Claims*

   Zip brings two claims against Trilini under Section 43 of the Lanham Act.  15 U.S.C. § 1125.  The first alleges unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A), and the second alleges false advertising in violation of 15 U.S.C. § 1125(a)(1)(B).  The theory of liability for both claims is the same: Trilini, by purchasing Troll seeds intended for sale in Russia and instead importing them for sale in the United States, is implicitly and falsely representing that those seeds are the same product sold by Zip, the exclusive United States licensee of the Troll mark.  In fact, the seeds Zip sells are a superior product, seasoned with higher quality ingredients according to special recipe for the North American market.

   Trilini contests Zip's standing to bring these claims, arguing that Zip is a mere licensee of Troll's mark and that only registrants or their assignees may bring suits for trademark

infringement under Section 32 of the Lanham Act. Zip has not, however, brought any claims under Section 32. It has brought claims only under Section 43, which explicitly permits suit "by any person who believes that he or she is likely to be damaged." 15 U.S.C. § 1125(a)(1); *see DEP Corp. v. Interstate Cigar Co.*, 622 F.2d 621, 624 n.3 (2d Cir. 1980) (noting that "a competitor who is or is likely to be damaged would have standing" to bring a claim under 15 U.S.C. § 1125(a), "in marked contrast to the trademark infringement action under 15 U.S.C. § 1114(1) which limits its standing to registrants"); *Osawa & Co. v. B&H Photo*, 589 F. Supp. 1163, 1165 (S.D.N.Y. 1984) (preliminarily enjoining gray-market imports on the basis of Section 43 claims brought by the owner of United States rights to a foreign mark).

Trilini argues in the alternative that even if a licensee is permitted to sue under Section 43, Zip may not do so because it is not the exclusive United States licensee of the Troll mark, but is merely the exclusive United States licensee of the Troll mark only with respect to seeds specially seasoned for the North American market. Trilini presumably reasons that a non-exclusive licensee can have no reasonable expectation that others will not sell goods bearing the same mark, and therefore no reasonable belief that it would be damaged by gray-market imports. The success of this argument depends, however, on rejecting Zip's factual allegation that it is the exclusive United States licensee of the Troll mark. Trilini suggests I may do so as a matter of law because the September 28, 2009 agreement describes the licensed product as "sunflower seeds especially seasoned by the Manufacturer," implying non-exclusivity with respect to the Troll mark when it is used in connection with other Troll products. I disagree, and conclude that Zip's allegation may not properly be rejected in deciding a motion to dismiss under Rule 12(b)(6).

Trilini next argues that even if Zip has standing, it has nevertheless failed to state a claim under Section 43 because it has not alleged an element necessary to both its unfair competition claim, 15 U.S.C. § 1125(a)(1)(A), and its false advertising claim, *id.* § 1125(a)(1)(B): that Trilini's sale of seeds under the Troll mark in the United States is likely to confuse or deceive consumers. All Zip has alleged is that Trilini is importing Troll seeds intended for sale in Russia and selling them in the United States. But that conduct is not likely to confuse or deceive consumers, Trilini reasons, because the seeds are in fact genuine Troll products and because Trilini does not make any claims, on the packages or in advertising, that its seeds are specially seasoned like those sold by Zip.

Trilini is correct that a markholder or licensee must allege that use of its mark by another creates a risk of confusion in order to state a claim under Section 43. *See id.* § 1125(a)(1)(A) (imposing civil liability on "[a]ny person who, on or in connection with any goods . . . uses in commerce any . . . word . . . [or] symbol . . . which is likely to cause confusion . . . or to deceive . . . as to the origin, sponsorship, or approval of his or her goods"); *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (plaintiff may establish a false advertising claim under § 1125(a)(1)(B) by "show[ing] that the advertisement, while not literally false, is nevertheless likely to mislead or confuse consumers"). Contrary to Trilini's suggestion, however, a gray-market importer is not immune from Section 43 liability merely because it sells goods under a mark applied by the mark owner. Although such goods are authentic in the sense that they originated with the mark owner, they are not considered "genuine" within the meaning of the Lanham Act if they are not authorized for sale in the United States and they differ materially from those that are. *See Original Appalachian Artworks, Inc. v. Granada Electronics, Inc.*, 816 F.2d 68, 71-73 (2d Cir. 1987); *see also Societe des Produits Nestle, S.A. v. Casa*

*Helvetia, Inc.*, 982 F.2d 633, 641 (1st Cir. 1992) (defining a material difference between authorized and gray market goods as one "that consumers would likely consider to be relevant when purchasing a product"). The sale of such goods is actionable by the exclusive United States licensee not because consumers may be confused about the manufacturer of the goods, but because consumers may unwittingly purchase the goods on the basis of the domestic markholder's reputation only to be disappointed when the product does not meet their expectations. *See Osawa & Co. v. B&H Photo*, 589 F. Supp. 1163, 1171-72 (S.D.N.Y. 1984).

In *Original Appalachian Artworks, Inc. v. Granada Electronics, Inc.*, 816 F.2d 68, 71-73 (2d Cir. 1987), for example, the Second Circuit enjoined the distribution in the United States of dolls intended for sale in Spain because confused consumers were buying the dolls expecting an English-language product for the American market. The Court found that the importation of the dolls was damaging the goodwill of the authorized United States distributors because the dolls' accompanying adoption papers and birth certificates were in Spanish, not English, making the dolls materially different from those authorized for sale in the United States. *See also A. Bourjois & Co. v. Katzel*, 260 U.S. 689, 691-92 (1923) (enjoining the unauthorized importation of a French brand of face powder because its sale in the United States infringed the trademark rights of the exclusive United States licensee).

Zip has adequately alleged the possibility of similar confusion on the part of consumers. Zip claims that, unlike the seeds it sells, the seeds Trilini imports are neither authorized for sale in the United States under the Troll mark nor specially seasoned with higher quality ingredients for the North American market. The difference in seasoning that Zip alleges is not immaterial as a matter of law. *See Societe des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 642, 644 (1st Cir. 1992) (chocolate candies with a higher percentage of milk fat

7

were materially different); *Grupo Gamesa, S.A. de C.V. v. Dulceria El Molino, Inc.*, No. CV-95-6086, 1996 WL 443659, at *2 (C.D. Cal. Apr. 9, 1996) (cookies and crackers made with enriched flour were materially different). Thus, Zip has stated a claim that the seeds Trilini sells are not "genuine" within the meaning of the Lanham Act and that consumers are therefore likely to be confused or deceived about the "sponsorship" and "characteristics" of the seeds. 15 U.S.C. § 1125(a)(1).

Zip also claims that it is entitled to an accounting of Trilini's profits from its sale of seeds under the Troll mark in the United States. Although Zip styles this demand as a cause of action, it is better characterized as a request for relief. Successful plaintiffs under the Lanham Act win the right, "subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) costs of the action." 15 U.S.C. § 1117(a). Although the Second Circuit has construed this section to permit the award of a defendant's profits only if a plaintiff can prove that the defendant acted with "willful deception," *see George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1540 (2d Cir. 1992), it did so before the section was amended in 1999 to suggest that a plaintiff who prevails on a claim under § 1125(a) may recover an accounting without such proof, s*ee Nike, Inc. v. Top Brand Co.*, No. 00-Civ-8179, 2005 WL 1654859 (S.D.N.Y. July 13, 2005) ("The 1999 amendment specifically added the word "willful" in reference to a violation under § 1125(c) of the Act, but not in reference to a violation under § 1125(a) of the Act (citing Trademark Amendments Act of 1999, Pub. L. No. 106-43, 113 Stat. 219 (1999))).

Trilini, assuming that willfulness remains a prerequisite to recovery of profits despite the amendment, argues that Zip is barred from pursuing an accounting because Zip does not adequately allege that Trilini acted willfully. I need not decide at this stage whether Trilini's

assumption is correct. Zip clearly alleges that Trilini knew or should have known of Zip's exclusive rights to the Troll mark in the United States and nevertheless chose to use the mark without authorization to promote its competing sales of sunflower seeds. These allegations are sufficient to show that Zip may be entitled to an accounting based on Trilini's willful infringement. *See Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger, U.S.A., Inc.*, 80 F.3d 749, 753-54 (2d Cir. 1996) (vacating as erroneous district judge's finding that the defendant had not willfully infringed the plaintiff's mark despite the defendant's minimal efforts to identify an owner of the mark before using it and continued use of the mark after confirming the plaintiff was the owner).

        b.    *The State Law Claims*

            (i)    *The Common Law Trademark Infringement and Unfair Competition Claims*

Zip also asserts trademark infringement and unfair competition claims under New York law. The essence of an infringement claim under New York or federal law is the same: the defendant's use of the mark must be likely to confuse consumers about the source of the defendant's product. *See Fireman's Ass'n of State of New York v. French American School of New York*, 839 N.Y.S.2d 238, 241 (3rd Dep't 2007). To state an unfair competition claim under New York law on the basis of alleged trademark infringement, a plaintiff must prove that the defendant's use of the mark is both likely to confuse consumers, *see W.W.W. Pharmaceutical Co. v. Gillette Co.*, 984 F.2d 567, 576 (2d Cir. 1993), and in bad faith, *see Camelot Assocs. Corp. v. Camelot Design & Dev., LLC*, 750 N.Y.S.2d 155, 156 (3rd Dep't 2002). *See also ITC Ltd. v. Punchgini, Inc.*, 9 N.Y.3d 467, 478 (2007) ("Under New York law, an unfair competition claim involving misappropriation usually concerns the take and use of the plaintiff's property to

9

compete against the plaintiff's own use of the same property." (internal quotation marks and alterations omitted)).

Trilini argues that Zip fails to state infringement and unfair competition claims under state law for the same reasons it fails to state infringement and accounting claims under federal law: Zip does not have standing because, contrary to its allegations, it does not hold a valid exclusive United States license to the Troll mark; even if it did, Trilini's sale of seeds under the Troll mark is not capable of confusing or deceiving consumers because the seeds actually did originate with Troll; and Zip does not allege that Trilini infringed its mark in bad faith. I reject Trilini's arguments for the reasons set forth above. Zip has adequately alleged infringement and unfair competition claims.

      (ii)    *The Unjust Enrichment Claim*

To state a claim for unjust enrichment under New York law, Zip must allege "(1) that [Trilini] was enriched; (2) that the enrichment was at [Zip]'s expense; and (3) that the circumstances are such that in equity and good conscience [Trilini] should return the money or property to [Zip]." *Golden Pac. Bancorp v. Fed. Deposit Ins. Corp.*, 273 F.3d 509, 519 (2d Cir. 2001). Zip's allegations that (1) Trilini profited from the sale of seeds in the United States under the Troll mark; (2) Trilini's profits came at the expense of Zip's; and (3) Trilini's profits were procured in violation of federal and state trademark law, are sufficient to state a claim for unjust enrichment.

      (iii)    *The Claims Under New York General Business Law § 349 and § 350*

Zip also claims that Trilini's conduct violates New York General Business Law § 349 and § 350, which respectively prohibit deceptive acts and practices and false advertising. To state a claim for deceptive acts and practices under § 349, a plaintiff must allege that "(1) the

defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *See Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000). "The standard for recovery under § 350, while specific to false advertising, is otherwise identical to § 349." *Goshen v. Mutual Life Ins. Co. of New York*, 98 N.Y.2d 314, 324 n.1 (2002). Although the purpose of both sections is the protection of consumers, competitors may sue under either if they can allege "some harm to the public at large." *Boule v. Hutton*, 328 F.3d 84, 94 (2d Cir. 2003) (referring to § 349); *see Andre Strishak & Assocs. v. Hewlett Packard Co.*, 752 N.Y.S.2d 400, 403 (2nd Dep't 2002) (plaintiff must allege "an impact on consumers at large" to state a false advertising claim under § 350).

Trilini argues that because Zip accuses it of nothing more than selling genuine Troll seeds under the Troll mark, Zip has failed to allege any deceptive act or false advertisement to support its claims. A plaintiff is not, however, required to allege a false statement to state a claim under § 349 or § 350. Instead, the plaintiff must allege an act or statement by the defendant that is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26 (1995). As explained above, Zip has adequately alleged that consumers are mistakenly purchasing the inferior seeds imported by Trilini because they are being misled by Trilini's unauthorized use of the Troll mark.

Trilini also argues that Zip does not allege any harm to consumers as a result of Trilini's use of the Troll mark, only harm to Zip. But Zip alleges that the seeds it imports are distinctively seasoned with higher quality ingredients than the seeds Trilini imports, which supports a reasonable inference that consumers are being harmed because they are inadvertently purchasing a product of inferior quality, a product they do not prefer, or both.

11

C. *Failure to Join an Indispensable Party*

Trilini also moves to dismiss the complaint under Rule 12(b)(7) on the ground that Zip has failed to join an indispensable party -- namely Troll, the alleged assignor or licensor of the trademark it seeks to enforce. Rule 12(b)(7) requires the dismissal of an action if the joinder of a person indispensable to the action is not feasible. Whether a person is indispensable depends on a weighing of the factors listed in Rule 19(b), but, at a minimum, the person must qualify as a necessary party under Rule 19(a). *See Jonesfilm v. Lion Gate Int'l*, 299 F.3d 134, 139 (2d Cir. 2002). Trilini does not explain why I should consider Troll an indispensable party, but it does argue that Troll is a necessary party because, regardless of the outcome of this action, Troll may sue it in a subsequent action alleging the same basis for liability. *See* Fed. R. Civ. Proc. 19(a)(1)(B) (mandating the joinder, if feasible, of any person who "claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest").

I need not decide this issue because Zip has represented that Troll will execute a stipulation representing that it has assigned to Zip its entire interest in the United States rights to its mark for the period from January 1, 2007 to December 31, 2010, the same period for which Zip claims to hold an exclusive United States license to the Troll mark. Upon the filing of a such a stipulation, Trilini will no longer face the risk of incurring multiple or inconsistent obligations as a result of Zip's failure to join Troll as a party. *See De Beers LV Trademark Ltd. v. De Beers Diamond Syndicate, Inc.*, No. 04-CIV-4099, 2005 WL 1164073, at *11 (S.D.N.Y. May 18, 2005) (denying defendants' motion to join as a necessary party the assignor of the trademark rights in an infringement suit because the suit was brought by the exclusive United States assignee and the

assignor had executed a release barring it from asserting any claims against the defendants that could have been asserted in the suit). Accordingly, Trilini's motion to dismiss for failure to join an indispensable party is denied without prejudice to renewal if a stipulation executed by Troll is not filed on or before March 12, 2010.

## CONCLUSION

The motion to dismiss is denied.

So ordered.

John Gleeson, U.S.D.J.

Dated: February 22, 2010
       Brooklyn, New York