| UNITED STATES DISTRICT COURT | ONLINE PUBLICATION ONLY |
|---|---|
| EASTERN DISTRICT OF NEW YORK | |

-------------------------------------------------------------x
ZIP INTERNATIONAL GROUP, LLC,

                  Plaintiff,          MEMORANDUM AND ORDER

      -against-                    09-CV-2437 (JG) (VVP)

TRILINI IMPORTS, INC., a/k/a TRILINI
IMPORTS, and TGF PRODUCTION, LLC,

                  Defendants.
-------------------------------------------------------------x

A P P E A R A N C E S:

    CARL E. PERSON
        325 West 45th Street, Suite 201
        New York, New York 10036
        *Attorney for Plaintiff*

    ULLMAN, SHAPIRO & ULLMAN, LLPC
        299 Broadway, Suite 1700
        New York, New York 10007
    By:    Charles H. Knull
        Linda M. Dougherty
        *Attorneys for Defendant Trilini Imports, Inc.*

JOHN GLEESON, United States District Judge:

        Zip International Group, LLC ("Zip"), claiming to be the exclusive U.S. distributor and licensee of a Russian brand of sunflower seeds, brings this suit against a competitor, Trilini Imports, Inc. ("Trilini"). Trilini buys seeds of the same brand intended for sale to consumers outside of the United States and instead resells them in the United States, a practice informally referred to as "gray market" importing. According to Zip, Trilini is infringing Zip's trademark rights and misrepresenting the source of its seeds, in violation of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and New York law. Zip seeks injunctive relief, compensatory and punitive damages, and attorney's fees. Trilini has moved for summary

judgment on Zip's complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons discussed below, the motion is granted.

BACKGROUND[1]

Since 2007, Zip has sold sunflower seeds processed by OOO Troll Co. ("Troll"), a Russian company. The product is sold in packaging bearing two marks. The larger of the two -- a stylized portrait of an old woman in a flowered head scarf, located on the front of the package -- is owned by Babkiny Semechki LLC ("Babkiny Semechki") and is referred to here as the "BABKINY mark." The second -- a small drawing of a troll located on the back of the package near the nutritional information -- is owned by Troll (the "TROLL mark"). The marks are referred to here collectively as the "Trademarks." Babkiny Semechki and Troll are affiliated companies. The seeds are imported in cartons containing consumer-sized packages, and each package of seeds bears the marks described above.

Zip was the first to market the seeds in the United States, beginning in 2007, and claims common law rights in the Trademarks as a result. In addition, Zip claims, and I assume the claim to be true for the purposes of this opinion, that it subsequently became the exclusive United States licensee of the Trademarks, and is entitled to enforce those marks even to the exclusion of Troll and Babkiny Semechki.[2] Zip's sales to date of the sunflower seeds have totaled $3 million, and it spends roughly $150,000 per year to market and advertise the seeds.

Although Trilini knows or should know of Zip's exclusive U.S. license to the Troll mark, Trilini nevertheless buys Troll seeds in Russia and resells them in the United States.

---

[1] The facts set forth here are either undisputed or are the version of events viewed in the light most favorable to Zip.
[2] The factual record in this regard is far from clear and not well-developed, but the grounds on which I grant Trilini's motion eliminate the need to resolve the disputed issues surrounding Zip's claims to the Trademarks. I assume for the sake of this opinion that Zip has the strongest claim to the Trademarks it alleges -- common law ownership.

Trilini does not repackage the individual-sized bags of seeds, but sells them in Troll's original packaging. The packages are identical to the packages in which the Zip-imported seeds are sold.

Because the seeds Trilini imports and sells in the United States bear the Trademarks, they allegedly confuse consumers as to the source of Trilini's seeds and damage Zip's goodwill. As a result, Zip is at risk of failing to sell the 100 tons of seeds it is obligated to purchase annually from Troll under their exclusive licensing agreement, and Troll may choose not to renew the agreement when it expires at the end of 2011, leading to losses in the hundreds of thousands or millions of dollars.

Trilini previously moved to dismiss the complaint pursuant to Fed. Rs. Civ. P. 12(b)(1) and 12(b)(6). I denied the motion in a memorandum and order issued on February 22, 2010. *Zip Int'l Grp. LLC v. Trilini Imports, Inc.*, 2010 WL 648696 (E.D.N.Y. Feb. 22, 2010). In the first amended complaint, to which Trilini's motion to dismiss was addressed, Zip alleged that the seeds it sold were "specially seasoned" for the United States market, and that the Trilini seeds were seasoned differently. I determined that "[t]he difference in seasoning that Zip alleges is not immaterial as a matter of law," and therefore held that "Zip ha[d] stated a claim that the seeds Trilini sells are not 'genuine' within the meaning of the Lanham Act and that consumers are therefore likely to be confused or deceived about the 'sponsorship' and 'characteristics' of the seeds." *Id.* at *5. Zip subsequently filed a second amended complaint in which it withdrew its allegation that its own seeds were uniquely seasoned, and now concedes that its seeds and those sold by Trilini are identical products in identical packaging.

The parties have completed discovery, and Trilini now moves for summary judgment on five grounds: (a) Zip has no trademark rights in either of the Trademarks; (b) Zip does not have standing to bring this lawsuit; (c) Zip's Section 43(a) claims are invalid as to

3

Trilini because the goods imported by Trilini are "genuine goods imported via the gray market"; (d) there is no likelihood of consumer confusion; and (e) Zip has not produced sufficient evidence to prove its claims. I heard oral argument on May 10, 2011. I now grant the motion for summary judgment in its entirety.

## DISCUSSION

A. *The Summary Judgment Standard*

Summary judgment is appropriate where an examination of the record reveals "no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law." *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998); *see* Fed. R. Civ. P. 56(c). All inferences must be drawn and all ambiguities resolved in favor of the nonmoving party. *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009). If it appears that a reasonable jury could return a verdict for the nonmoving party, the Court may not grant summary judgment. *Id.* If, however, the moving party demonstrates that there are no genuine issues of material fact, "the nonmoving party must come forth with evidence sufficient to allow a reasonable jury to find in [its] favor." *Roe v. City of Waterbury*, 542 F.3d 31, 36-37 (2d Cir. 2008) (punctuation omitted). Evidence presented by the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

B. *Zip's Claims*

1. *The Lanham Act Claims*

Zip brings two claims against Trilini under Section 43 of the Lanham Act. 15 U.S.C. § 1125. The first alleges unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A),

4

and the second alleges false advertising in violation of 15 U.S.C. § 1125(a)(1)(B). The theory of liability for both claims is the same: Trilini, by purchasing seeds bearing the Trademarks which are intended for sale in Russia or elsewhere in Europe and instead importing them for sale in the United States, is implicitly and falsely representing that those seeds are the same product sold by Zip, the exclusive United States licensee of the Trademarks.

      a.    *Standing under Section 43(a)*

Trilini has challenged Zip's statutory standing to bring this lawsuit. In briefing the issue, both sides focus on whether Zip can properly be considered the "owner" of the Trademarks. But while Section 32 of the Lanham Act does indeed require that a plaintiff be, with some limited exceptions, the "owner" of the mark, Section 43 permits *any* party to bring suit provided that they have "a reasonable interest to be protected against [the defendant's] false or misleading claims, and a reasonable basis for believing that this interest is likely to be damaged" by the conduct at issue. 15 U.S.C. § 1125(a); *see Calvin Klein Jeanswear Co. v. Tunnel Trading*, 2001 WL 1456577, at *5 (S.D.N.Y. Nov 16, 2001). Therefore, any plaintiff who can "demonstrate that it has the potential for a commercial or competitive injury, . . . or, in other words, that the false designation of defendant's product is likely to cause plaintiff to suffer a loss in sales, has standing to bring a suit" under Section 43. *Havana Club Holding, S.A. v. Galleon, S.A.*, 62 F. Supp. 2d 1085, 1097 (S.D.N.Y. 1999) (internal quotation omitted). Section 43, therefore, conveys standing on trademark licensees. *Calvin Klein Jeanswear Co.*, 2001 WL 1456577, at *5 ("Courts have consistently recognized that this broad language confers standing on trademark licensees."); *see Johnson & Johnson v. Carter-Wallace, Inc.*, 631 F.2d 186, 189 (2d Cir. 1980) (noting that the Second Circuit has long recognized that § 43 "entitles a broad range of commercial parties to relief").

Zip has an interest in protecting the goodwill associated with the Trademarks, as its reputation and ability to generate business depend on the quality of the product it sells. Therefore, Zip has standing to sue under Section 43 of the Lanham Act.[3]

> b. *Genuineness and Consumer Confusion*

As a general rule, "trademark law does not reach the sale of genuine goods bearing a true mark even though the sale is not authorized by the mark owner," *Polymer Tech. Corp. v. Mimran* ("*Polymer I*"), 975 F.2d 58, 61 (2d Cir. 1992), for "there is no possibility of deception or confusion." *H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1023 (2d Cir. 1989) ("The unauthorized sale of a genuine trademarked product does not in itself constitute trademark infringement." (citations omitted)). However, "[b]ecause gray market goods are often similar in composition and appearance to their United States counterparts, and because the manufacturer of the gray market goods is often related in some manner to the United States trademark holder, it is often difficult to determine whether such goods are genuine." *Helene Curtis v. Nat'l Wholesale Liquidators, Inc.*, 890 F Supp. 152, 157 (E.D.N.Y. 1995). Therefore, the presumption that goods sold under a true mark do not constitute trademark infringement can be defeated by presenting evidence that the goods are not genuine. *See Polymer I*, 975 F.2d at 62.[4]

---

[3] Zip may have standing under § 32 as well as § 43, as it is the exclusive licensee in the United States and Canada of the Trademarks. *See Quabaug Rubber Co. v. Fabiano Shoe Co., Inc.*, 567 F.2d 154, 159 (1st Cir. 1977) ("[T]rademark infringement suits [may] be maintained by exclusive distributors and sellers of trademarked goods, i.e., 'exclusive licensees' who had a right by agreement with the owner of the trademark to exclude even him from selling in their territory."). However, because Zip does not bring claims under § 32, I need not decide this issue.

[4] In *Ryan v. Volpone Stamp Co.*, 107 F. Supp. 2d 369 (S.D.N.Y. 2000), Judge Charles Haight performed a survey of district courts in the Second Circuit and synthesized their various approaches into the following test:

> [A] court faced with an infringement claim for unauthorized sales of a trademarked product must perform a two-part test analysis. First, the court must consider whether the trademark owner authorized the first sale of the goods. Second, the court must consider whether the goods were genuine. If the initial sale was authorized, the court must undertake the second part of the analysis and

The Second Circuit has established two alternative methods for evaluating genuineness in the area of grey goods: the "quality control test" and the "material differences test."[5] *Helene Curtis*, 890 F. Supp. at 157-58.

      i.    *Quality Control Test*[6]

The first manner in which a plaintiff may demonstrate that gray market goods are not genuine is to show that they are not subject to the same quality control standards that the genuine goods must meet. "One of the most valuable and important protections afforded by the Lanham Act is the right to control the quality of the goods manufactured and sold under the holder's trademark." *El Greco Leather Prods. Co., Inc. v. Shoe World*, 806 F.2d 392, 395 (2d Cir. 1986). Therefore, "[g]oods . . . that do not meet the trademark owner's quality control standards will not be considered genuine goods, and their sale will constitute trademark infringement." *Polymer Tech. Corp. v. Mimran* ("*Polymer II*"), 37 F.3d 74, 78 (2d Cir. 1994). Accordingly, in order to dispute the genuineness of the goods imported and sold by Trilini, Zip

---

determine whether, as a matter of fact, the goods which were later resold without authorization were genuine. If the goods were genuine, there is no violation of the Lanham Act despite the fact that the goods were resold without the trademark owner's consent[, unless the plaintiff can establish consumer confusion as to sponsorship, as described in the Second Circuit's decision in *H.L. Hayden,* 879 F.2d at 1023-24]. If the goods were not genuine, that is altered or not in keeping with the trademark owner's quality standards, a valid claim for trademark infringement is established. If the trademark owner did not approve the original sale, the goods cannot be considered genuine as a matter of law and infringement is established.

*Id.* at 382. As there is no dispute that the first sale, from Troll to the Russian distributor from whom Trilini purchases its stock, was authorized, only the genuineness issue is raised by this case.

     [5]    Although parts of these tests were established in the context of § 32 of the Lanham Act, "[b]ecause the elements required to succeed under 15 U.S.C. § 1125 are virtually the same as under 15 U.S.C. § 1114, case law applicable to Section 32 claims applies with equal force to Section 43 claims." *Krasnyi Oktyabr, Inc. v. Trilini Imports*, 578 F. Supp. 2d 455, 467 (E.D.N.Y. 2008) (citing *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir. 1986) ("[I]n either a claim of trademark infringement under § 32 or a claim of unfair competition under § 43, a prima facie case is made out by showing the use of one's trademark by another in a way that is likely to confuse consumers as to the source of the product.")).

     [6]    The applicability of the quality control test to a suit brought not by the manufacturer but by a competing distributor is uncertain. The party in control of the quality standards is almost always the manufacturer, not the secondary wholesaler-distributor, and Zip has presented no evidence to show that it had (or attempted to gain) any control over the quality of the goods imported by Trilini. *See, e.g.*, *In re Polar Music Int'l AB*, 714 F.2d 1567, 1571 (Fed. Cir. 1983). Nevertheless, I analyze Zip's claims under the quality control test as well as the material differences test.

must, at a minimum, produce evidence to demonstrate that Trilini's goods are not subject to the same type or measure of quality control as Zip's goods.

Zip has produced no evidence indicating that the seeds sold by Trilini are of an inferior quality to those sold by Zip, or that the standards to which Trilini's products are held are any different from those to which Zip's own products are held. Trilini, an experienced importer and distributor, has demonstrated that the seeds it imports are kept in a state of the art warehouse and that it receives storage instructions with each shipment. D. R. 56 Statement ¶¶ 24, 37; *see also id.* ¶ 38 ("The quality, authenticity, and source of the sunflower seeds purchased by Trilini from Babkiny Semechki's Russian distributors and sold to the public are the same as the quality, authenticity, and source of any other Babkiny Semechki product."), and ¶ 41 ("The quality of the sunflower seeds imported by Trilini is of the same quality as those imported by Plaintiff."). Zip has not disputed Trilini's statements in its Rule 56 Statement, in any of its submissions in opposition to the motion for summary judgment, or at oral argument. Moreover, Zip's contract with Troll contains no requirement that Zip maintain any level of quality control over the seeds, thereby indicating that quality control measures, to the extent they exist, are performed by Babkiny Semechki or Troll and not by the licensed distributors. *See* D. R. 56 Statement ¶ 19. Therefore, I conclude as a matter of law that Zip has produced insufficient evidence from which a rational jury could find that the goods imported and distributed by Trilini are anything other than "genuine" Babkiny Semechki products under the quality control test.

    ii.    *Material Differences Test*

"The sale of gray goods also violates the Lanham Act if the goods (1) are not intended to be sold in the United States, and (2) are materially different from the authentic goods that are authorized for sale in the U.S. market." *Helene Curtis*, 890 F. Supp. at 158 (citing

*Original Appalachian Artworks, Inc. v. Granada Elecs.*, 816 F.2d 72-73 (2d Cir. 1987) and *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 638 (1st Cir. 1992) ("*Nestle*")). "Generally, courts find consumer confusion only where consumers, relying on the reputation of a trademark, buy a product that they think is safe or of a certain quality, and then subsequently find out that they have actually purchased an inferior item." *Polymer II*, 37 F.3d at 81. Therefore, a gray market good that is materially different from a genuine good that has been approved for sale is infringing, even if it is still in the same packaging it was in when it left the factory of the mark holder. *See El Greco,* 806 F.2d at 395-96. A material difference can be "*any* difference between the registrant's product and the allegedly infringing gray good that consumers would likely consider to be relevant when purchasing a product." *Nestle*, 982 F.2d at 641 (emphasis added).

Both sides agree that the products sold by Trilini are purchased from a Russian distributor and are not intended for sale in the United States. Therefore, Zip has satisfied the first prong of the material differences test.[7] However, Zip has not shown that there is any material difference between the seeds it imports and those that are imported by Trilini. It is undisputed that Trilini purchases its seeds from distributors in Russia who are authorized to sell Babkiny products in Russia -- the packages thus bear a "true mark." *Polymer I*, 975 F.2d at 62; *see* P. R. 56 Statement ¶ 26. It is further undisputed that the packaging of the seeds sold by Trilini is identical to the packaging of the seeds sold by Zip. *Cf. Original Appalachian Artworks, Inc.*, 816 F.2d 68 (owner of Cabbage Patch dolls trademark entitled to injunctive relief where re-

---

[7] Zip argues that even if Trilini's seeds are genuine, "Trilini has no right to import goods bearing the Two Trademarks" and thereby compete with Zip, the exclusive North American licensee of the Trademarks. Opp. at 9. This argument is defeated by the test itself, which requires *both* prongs to be established. By using the conjunctive, the Second Circuit showed that it was well aware that the authentic goods could lawfully be imported into the United States even without the permission of the mark holder. I therefore reject Zip's argument that the act of importation with the intent to sell the goods in the United States constitutes a *per se* infringement of the Trademarks.

imported dolls intended for Spanish market differed from United States-targeted dolls only by their use of the Spanish language in their packaging). Zip has withdrawn its allegation that the seeds it sells are a superior product, seasoned with higher quality ingredients according to a special recipe for the North American market. (*See* 2d Am. Compl. ¶¶ 6, 20-21 (omitting allegations).) It does not allege that the seeds sold by Trilini are in any way different from the seeds sold by Trilini. I therefore conclude as a matter of law that Zip cannot demonstrate that the seeds sold by Trilini are materially different from those sold by Zip. *Cf. Warner-Lambert Co. v. Northside Dev. Corp.*, 86 F.3d 3 (2d Cir. 1996) (products sold past expiration date were materially different); *Nestle*, 982 F.2d 633 (chocolates made from higher percentage of milk fat, packaged in matte rather than shiny containers, and kept in less climate-controlled storage were materially different); *Osawa & Co. v. B&H Photo*, 589 F. Supp. 1163 (S.D.N.Y. 1984) (camera sold with different warranty agreement was materially different).

   c. *Likelihood of Confusion as to the Source of the Goods*

Zip argues in the alternative that the goods sold by Trilini do not accurately reflect the "source" of the goods and that consumers are therefore likely to be confused. The "likelihood of confusion as to the source of the goods in question is an indispensable element of . . . claims for trademark infringement and unfair competition, whether based upon § 43 of the Lanham Act or New York common law." *L.G.B. Inc. v. Gitano Grp., Inc.*, 769 F. Supp. 1243, 1249 (S.D.N.Y. 1991). The entity with the right to control the quality of the goods is the "source" of those goods. *In re Polar Music Int'l AB*, 714 F.2d 1567, 1571 (Fed. Cir. 1983) ("Since [the producer of the goods] controls the quality of the goods, it is the source of the goods.").

Zip argues that the "source" of goods is not necessarily the manufacturer, but is instead "the company having the right to use the trademark." P. R. 56 Statement ¶ 34. This contention has its roots in a 1923 opinion written by Justice Holmes. In *A. Bourjois & Co. v. Katzel*, 260 U.S. 689, 692 (1923), Justice Holmes wrote:

> It is said that the trade-mark here is that of the French house and truly indicates the origin of the goods. But that is not accurate. It is the trademark of the plaintiff only in the United States and indicates in law, and, it is found, by public understanding, that the goods come from the plaintiff although not made by it. It was sold and could only be sold with the good will of the business that the plaintiff bought.

Zip accordingly argues that Trilini's use of the Trademarks falsely indicates that the goods "come from" Zip, and that the public is thus deceived as to the origin of the goods.

But the *Bourjois* principle is more limited than Justice Holmes' opinion might suggest. As then-District Judge Leval explained in *Osawa*, it is the nature of the domestic mark holder's goodwill in the mark that is the relevant inquiry under *Bourjois*. In *Osawa*, the defendants suggested that a domestic assignee could not exclude legitimate goods produced overseas by the licensor from the United States stream of commerce -- a suggestion they derived from *Bourjois*. Judge Leval responded:

> This reasoning is flawed . . . where the assignee of the mark . . . has developed a separate, factually independent goodwill. . . . If the U.S. mark represents nothing more than a foreign outpost of the goodwill associated with the original mark, it might well be argued that . . . no infringement occurs on unauthorized importation. But where . . . the U.S. assignee has developed a separate goodwill factually independent from the markholder, [the U.S. mark is] a legally distinct and factually different mark.

*Id.* at 1174. The latter type of goodwill, he determined, was the type that motivated the holding in *Bourjois*. *Id.*; *see also Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368 (1024) (Holmes, J.) (distinguishing *Bourjois* where defendant compounded plaintiff's loose face powder with its own binding agent and the packaging made that clear; because "the mark is used in a way that does

not deceive the public," the Court saw "no sanctity in the word as to prevent its being used to tell the truth"); *Olympus Corp. v. United States*, 792 F.2d 315, 321 (2d Cir. 1986) (noting that *Bourjois* was "influenced by equities not present" where imported goods were genuine products of overseas mark holder) (disapproved of on other grounds by *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 290-90 (1988), with respect to interpretation of Customs Service regulation at issue); *Ballet Makers, Inc. v. U.S. Shoe Corp.*, 633 F. Supp. 1328, 1334-35 (S.D.N.Y. 1986) (distinguishing *Bourjois* and holding that where goods were genuine product of mark holder, exclusive licensee of mark holder could not prevent subsequent licensee of mark holder from representing mark holder as source of goods).

On the facts of this case there is no legitimate dispute over the fact that the party with the right to control the quality of the goods, and thereby the goodwill associated with the sunflower seeds, is Troll, not Zip. Indeed, both Zip and Trilini use the Trademarks to indicate that the goods' source is Troll. Zip does not argue that it is anything than a "foreign outpost" of the goodwill associated with Babkiny Semechki and with Troll. Therefore, Zip cannot successfully argue that Trilini's use of the Trademarks will deceive consumers as to the source of the goods, as the source of both Zip's and Trilini's goods is the same. Further, because Zip is not suing in Troll's stead (*i.e.*, invoking § 32 of the Lanham Act), but as a licensee protecting the value of its license, its argument that it is the "source" of the seeds intended for sale in North America has no merit. That source remains Troll.

Even if the "source" of the seeds were in fact Zip and not Troll, Zip has not produced any evidence to indicate that consumers are *in fact* confused -- or that Zip's goodwill has been harmed. The only harm alleged flows from competition, that is, from consumers purchasing seeds from another seller that are identical in origin, quality, and packaging to those

12

sold by Zip itself. *See Italverde Trading, Inc. v. Four Bills of Lading Numbered LRNN 120950, LRNNN122950, LRNN 123580, and MSLNV 254064*, 485 F. Supp. 2d 187, 207-08 (E.D.N.Y. 2007) (rejecting infringement claim where "[p]laintiffs' only argument that [defendant's] sale of the [products] caused consumer confusion is that consumers were improperly led to believe that [defendant] was an authorized distributor of [the] products"); *see also Matrix Essentials, Inc. v. Emporium Drug Mart, Inc. of Lafayette,* 988 F.2d 587, 593 (5th Cir. 1993) (defendant entitled to judgment as a matter of law where it did nothing more than make unauthorized sales of trademarked good). "The Second Circuit has clearly held that, even where a defendant makes an unauthorized sale of a trademarked good, the plaintiff must still prove consumer confusion in order to recover damages."[8] *Italverde Trading*, 485 F. Supp. 2d at 208. In order to survive summary judgment, therefore, Zip must provide at least some evidence that raises a genuine issue of material fact as to whether consumers are confused by the seeds sold by Trilini.

This it has not done. The undisputed evidence demonstrates that when consumers purchase seeds imported by Trilini, they receive precisely the goods they expected to purchase, from the source they expected to purchase them from. I therefore conclude as a matter of law that Zip cannot prove that consumers are confused or damaged when they purchase the Trilini-imported seeds bearing the Trademarks rather than the same seeds imported by Zip.

Because trademark law does not protect trademark holders -- or others who seek to enforce a trademark – from sales of "genuine goods bearing a true mark," *Polymer I*, 975 F.2d at 62, I accordingly dismiss Zip's claims under the Lanham Act.

---

[8] Plaintiff has also requested injunctive relief on this claim. Unlike the standard for damages, a plaintiff seeking injunctive relief need only demonstrate a likelihood of confusion. *See Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 246-47 (2d Cir. 2009); *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003). But where, as here, the goods sold by the plaintiff and defendant are identical, the plaintiff has not shown even a likelihood of confusion. The claim for injunctive relief is denied.

2. *The State Law Claims*

a. *The Common Law Trademark Infringement and Unfair Competition Claims*

Zip asserts common law trademark infringement and unfair competition claims, arguing that it gained a common law right to enforce the Trademarks by being the first party to use the Trademarks in the United States. The essence of an infringement claim under New York as well as federal law is that the defendant's use of the mark must be likely to confuse consumers about the source of the defendant's product. *See Fireman's Ass'n of State of New York v. French American School of New York*, 41 A.D.3d 925, 927 (N.Y. App. Div. 2007). To state an unfair competition claim under New York law on the basis of alleged trademark infringement, a plaintiff must prove that the defendant's use of the mark is both likely to (or actually does) confuse consumers, *see W.W.W. Pharm. Co. v. Gillette Co.*, 984 F.2d 567, 576 (2d Cir. 1993), and in bad faith, *see Camelot Assocs. Corp. v. Camelot Design & Dev., LLC*, 298 A.D.2d 799, 800 (N.Y. App. Div. 2002). *See also ITC Ltd. v. Punchgini, Inc.*, 9 N.Y.3d 467, 478 (2007) ("Under New York law, an unfair competition claim involving misappropriation usually concerns the take and use of the plaintiff's property to compete against the plaintiff's own use of the same property." (internal quotation marks and alterations omitted)).

As discussed above, Zip has failed to prove that Trilini's use of the Trademarks is likely to confuse customers about the source or nature of the product. "The state law cause of action for unfair competition shares many common elements with the Lanham Act claims of false designation of origin and trademark infringement." *W.W.W. Pharm Co.*, 984 F.2d at 576. Accordingly, the Lanham Act analysis above also applies to Zip's common law claims. Therefore, and for the reasons discussed above under the material differences test, Zip has not

adduced evidence from which a jury could conclude that Trilini's use of the Trademarks is likely to confuse customers in any way, and Zip's common law trademark claims are dismissed.

    b.  *The Unjust Enrichment Claim*

  To survive summary judgment on a claim for unjust enrichment under New York law, Zip must show "(1) that [Trilini] was enriched; (2) that the enrichment was at [Zip]'s expense; and (3) that the circumstances are such that in equity and good conscience [Trilini] should return the money or property to [Zip]." *Golden Pac. Bancorp v. Fed. Deposit Ins. Corp.*, 273 F.3d 509, 519 (2d Cir. 2001).

  Zip alleges that (1) Trilini profited from the sale of seeds in the United States under the Troll mark; (2) Trilini's profits came at the expense of Zip's; and (3) Trilini's profits were procured in violation of federal and state trademark law. Though there appears to be no dispute that Trilini has profited from its sales of the seeds under the Troll mark, Zip has failed to produce evidence from which a factfinder could conclude that Trilini's profits have come at the expense of Zip's.[9] More importantly, Zip's inability to establish any impropriety in Trilini's importation and sale of the sunflower seeds precludes it from satisfying the third element of its unjust enrichment claim. That claim is therefore dismissed.

    c.  *The Claims Under New York General Business Law § 349 and § 350*

  Zip further alleges that Trilini's conduct violates New York General Business Law §349 and § 350, which respectively prohibit deceptive acts and practices and false advertising. To state a claim for deceptive acts and practices under § 349, a plaintiff must allege that "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *See Maurizio v. Goldsmith*,

---

[9]  The only evidence Zip has provided on this point is four paragraphs in the Nagel declaration that are general, speculative, and not supported by any evidence in the record. *See* Nagel Dec. ¶¶ 31, 33-35.

15

230 F.3d 518, 521 (2d Cir. 2000). "The standard for recovery under § 350, while specific to false advertising, is otherwise identical to § 349." *Goshen v. Mutual Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195 n.1 (N.Y. 2002). "When a competitor raises a § 349 claim, . . . the gravamen of the complaint must be consumer injury or harm to the public interest." *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 277 F. Supp. 2d 269, 273 (S.D.N.Y. 2003); *see Boule v. Hutton*, 328 F.3d 84, 94 (2d Cir. 2003) (referring to § 349); *Andre Strishak & Assocs., P.C. v. Hewlett Packard Co.*, 300 A.D.2d 608, 609 (N.Y. App Div. 2002) (plaintiff must allege "an impact on consumers at large" to state a false advertising claim under § 350).

Zip's failure to prove its Lanham Act claims is fatal to its New York statutory claims. Because Zip cannot show consumer confusion, it cannot show that Trilini's actions have resulted in either consumer injury or harm to the public interest. It therefore cannot sustain an action under New York's General Business Law. Further, with regard to the claim under § 350, Zip has introduced no evidence to indicate that Trilini engages in advertisement of any sort, let alone false advertisement; indeed, Trilini has established that it does not advertise at all, *see* M. Kerzhner Decl. at ¶ 25, and Zip has not contradicted that claim. The New York statutory claims are therefore dismissed.[10]

3.  *Demand for Accounting*

Finally, Zip claims that it is entitled to an accounting of Trilini's profits from its sale of seeds under the Trademarks in the United States. Successful plaintiffs under the Lanham

---

[10] Some courts have held that trademark cases fall outside the scope of the New York's consumer protection statute, reasoning that the public harm that results from trademark infringement is "too insubstantial to satisfy the pleading requirements of § 349." *Karam Prasad, LLC v. Cache, Inc.*, 2007 WL 2438396, at *2 (S.D.N.Y. Aug. 27, 2007) (quoting *Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*, 221 F. Supp. 2d 410, 413 n.2 (S.D.N.Y. 2002)) (collecting cases). Thus, Zip's allegations may not even be actionable under the asserted provisions of New York law, an issue I need not address here.

Act win the right, "subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) costs of the action." 15 U.S.C. § 1117(a).[11]

Zip argues that Trilini did not act in good faith because it purchased its product from Russian distributors rather than from Troll itself, and because it knew that it was not permitted to resell the products it purchased from Russian distributors in the United States and Canada. Opp. at 10. This claim fails for several reasons. First, Zip has adduced no evidence that Trilini was not permitted to resell the Russian product in the United States. Indeed, Zip has produced no evidence that Trilini was even aware of Zip's licensing agreement with Troll or Babkiny Semechki. Most importantly, "[r]egardless of the presence or absence of a contractual restriction, a distributor's failure to observe a restrictive condition on the sale of a product can only constitute trademark infringement," and therefore give rise to an action for an accounting, "if the trademark owner can prove consumer confusion, the hallmark of any trademark infringement claim." *Polymer II*, 37 F.3d at 80. Because Zip has failed to prove its substantive claims, all of which rest on the presence of consumer confusion, it cannot sustain an action for an accounting.

---

[11] Although the Second Circuit has construed this provision to permit the award of a defendant's profits only if a plaintiff can prove that the defendant acted with "willful deceptiveness," *see George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1540 (2d Cir. 1992), it did so before the section was amended in 1999 to suggest that a plaintiff who prevails on a claim under § 1125(a) may recover an accounting without such proof, *see Nike, Inc. v. Top Brand Co.*, 2005 WL 1654859 (S.D.N.Y. July 13, 2005) ("The 1999 amendment specifically added the word "willful" in reference to a violation under § 1125(c) of the Act, but not in reference to a violation under § 1125(a) of the Act." (citing Trademark Amendments Act of 1999, Pub. L. No. 106-43, 113 Stat. 219 (1999))). However, it seems clear that at least some requirement of willful misconduct has survived the 1999 amendment. *See Rodgers v. Wright*, 2011 WL 722772, at *3 n.2 (S.D.N.Y. March 1, 2011) (collecting cases). In any event, because I find that Zip has not established its substantive claim, it is not a successful plaintiff under the Lanham Act and is therefore not entitled to an accounting.

CONCLUSION

The motion for summary judgment is granted, and the claims against Trilini are dismissed.

So ordered.

John Gleeson, U.S.D.J.

Dated: May 24, 2011
      Brooklyn, New York